The Huntington Creek Corporation *v.*
Commonwealth.

Argued April 6, 1972, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Ronald F. Kidd,* with him *Duane, Morris & Heck-scher,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, September 5, 1972:

This appeal raises a very narrow question concerning the entitlement of a foreign corporation to various credits against its foreign excise tax liability resulting from payments of excise tax by the corporation at an earlier time and by other corporations now merged into the taxpayer corporation.

The appellant is a Maryland corporation called the Huntington Creek Corporation (Huntington Creek-Maryland). It was originally incorporated in Maryland as the Hunter-Wilson Distilling Company, Inc. (Hunter-Wilson) and first qualified to do business in Pennsylvania upon the issuance of a certificate of authority by the Department of State on January 2, 1941.

On June 3, 1960, following the sale of certain assets located in Pennsylvania, Hunter-Wilson withdrew its Pennsylvania certificate of authority and on August 9, 1960 changed its name to Henry Kelly Importing and Distilling Company, Inc. (Henry Kelly), under its Maryland corporate charter.

Leroux and Company, Inc. (Leroux), a Delaware corporation incorporated in 1958 and qualified in Pennsylvania on April 27, 1960, merged with a Pennsylvania corporation, the Huntington Creek Corporation (Huntington Creek-Pennsylvania) on March 31, 1962. Huntington Creek-Pennsylvania had been a domestic corporation since 1947 originally chartered under the name of Dillinger Distillers, Inc.

On August 31, 1965, Huntington Creek-Pennsylvania and Henry Kelly, the Maryland corporation, effected a merger whereby the surviving *Maryland* corporation took the name of the merged *Pennsylvania* corporation. The surviving foreign corporation, Hunt-

ington Creek-Maryland, applied for and received a certificate of authority to do business in Pennsylvania on the date of the merger.

During the period when it was not qualified to do business in Pennsylvania—between June 3, 1960 when it withdrew its certificate of authority and August 31, 1965 when it renewed its certificate and became requalified—the Maryland corporation (Hunter-Wilson, Henry Kelly, Huntington Creek-Maryland) carried on no business activities in Pennsylvania except for warehousing various quantities of whiskey within the Commonwealth. As a result of such warehousing, the Maryland corporation was liable for and paid corporate income taxes from 1960 to 1965 but did not pay foreign excise taxes.

Upon recertification, Huntington Creek-Maryland filed various corporate tax reports required by law to be filed by a foreign corporation engaged in intrastate business in Pennsylvania. Among those reports was the one generating this appeal.

Huntington Creek-Maryland filed a Foreign Excise Tax report pursuant to the Act of July 25, 1953, P. L. 560, 72 P.S. §1861 et seq., repealing and amending the Foreign Bonus Act of May 8, 1901, P. L. 150, 72 P.S. §1861 et seq.[1]

The Act requires all foreign corporations qualified to do business in Pennsylvania to pay a one-time privilege tax to the Commonwealth on their initial capital upon entry or upon any subsequent increase in such capital as defined in the Act. A system of credits and deductions is provided for in the original Act of July 25, 1953 and in subsequent amendments found in the Act of August 14, 1963, P. L. 1102. The original Act

---

[1] The Foreign Excise Tax has been repealed absolutely by the Act of March 4, 1971, P. L. (Act No. 2), Section 1005, 72 P.S. §8001 et seq., which imposes a substantially similar tax.

provides at Section 2: "Imposition of Tax.—From and after the effective date of this act, every foreign corporation, in addition to complying with all the laws of the Commonwealth now or hereafter in effect, shall, for the privilege of exercising its franchises in Pennsylvania, pay to the Department an excise tax of one-third of one per centum upon the amount of any increase of capital actually employed wholly within this Commonwealth."

Under the definitional section, we find that "increase of capital" as used above in Section 2 means both the subsequent increase of capital occurring in a foreign corporation qualified before the effective date of the Act and the initial total capital of a foreign corporation qualifying to do business for the first time after 1953.

" 'Increase of Capital' means (a) as to foreign corporations doing business in this Commonwealth at the effective date of this act, any increase of capital in excess of the amount actually employed wholly in this Commonwealth at any time prior to the first day of January, one thousand nine hundred fifty-three, by such corporations reporting on a calendar year basis, or at any time prior to the first day of any fiscal year, beginning in the calendar year one thousand nine hundred fifty-three, by such corporations reporting on a fiscal year basis; (b) as to corporations admitted to do business in this Commonwealth after the effective date of this act, capital actually employed wholly within this Commonwealth at the time of or after receiving a certificate of authority to do business from the Department of State and any increase thereof."

The appellant here had $15,969,375 as the maximum amount of capital employed in Pennsylvania during its first fiscal year. However, as Hunter-Wilson, the Maryland corporation had employed a maximum capi-

tal of $9,305,482 (occurring in 1957) during its nineteen years of doing business here. The appellant therefore claimed a deduction from total capital employed of $9,305,482 as a foreign corporation qualified before the Act of July 25, 1953, 72 P.S. §1861 et seq., and therefore liable for excise tax only on *increases* in capital above that capital on which tax had already been paid.

Further, appellant deducted an additional $1,213,491 from its total capital as the maximum amount of capital employed in Pennsylvania by Leroux during its existence as a qualified foreign corporation before its 1962 merger with Huntington Creek-Pennsylvania.

The Department of Revenue disallowed the appellant's claimed credits and assessed foreign excise tax liability against the total capital employed during the corporation's first fiscal year in Pennsylvania. The appellant filed a petition for resettlement which was denied and a petition for review with the Board of Finance and Revenue which refused the petition and sustained the original departmental settlement.

The appellant timely filed this appeal from the Board's refusal to the Court of Common Pleas of Dauphin County which transferred the matter here upon the enactment of the Appellate Court Jurisdiction Act of July 31, 1970, P. L. 673, 17 P.S. §211.401 et seq. The facts are not in dispute as the parties filed a stipulation, pursuant to the Act of April 22, 1874, P. L. 109, 12 P.S. §688, which we adopt as the facts found by this Court and the substance of which is referred to herein.

The Commonwealth advances two arguments in support of its refusal to allow the credits sought. The first argument which supports the denial of the $9,305,482 deduction is based on a recent decision of the Court of Common Pleas of Dauphin County; the second argument which supports the denial of the $1,-

213,491 deduction rests on a statutory interpretation of the Act of August 14, 1963. We shall discuss them separately.

The deduction claimed for the foreign excise tax payments made to the Commonwealth by Hunter-Wilson between 1941 and 1960 is premised on the theory that the Maryland corporation having been certificated in 1941, and having paid full excise taxes on all increases in capital after the adoption of the Act of July 25, 1953, 72 P.S. §1861 et seq., should be treated as a foreign corporation "doing business at the effective date of this act" under Section (a) rather than as a corporation "admitted to do business in this Commonwealth after the effective date of this act" under Section (b).

At first blush, Huntington Creek-Maryland would appear to fall into both definitions. Before the 1953 enactment, as Hunter-Wilson, it was a foreign corporation doing business in Pennsylvania under a certificate of authority, a status that terminated in 1960 upon withdrawal of that certificate. On the other hand, in 1965 it obtained a new certificate of authority admitting it to do business in the state after the 1953 enactment.

However, we find the situation directly analogous to the facts in the case of *Commonwealth v. American Metal Climax, Inc.*, 92 Dauph. 300 (1970). The Court of Common Pleas of Dauphin County posed the problem there as follows:

"The difficulty arises because, while the Company can be made to fit into either (a) or (b) so long as these two subsections are taken separately, when they are taken together, the taxpayer now seems at one and the same time to fall into either subsection or both. Upon this basis, appellant contends that the terms of the statute are ambiguous and that, therefore, an application of the rules of construction must follow.

"We agree that in any case where the terms of a taxing statute are unclear or ambiguous, any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer. In the case at hand, however, we see no ambiguity, nor do we find any irreconcilable inconsistencies in or between the terms of the statute." 92 Dauph. at 303.

Resolving the statutory interpretation question against the corporation-taxpayer in that case, the court went on to state: "We are concerned here . . . with whether or not a credit for the amount of capital upon which tax has previously been paid will survive the withdrawal from Pennsylvania by the corporation entitled thereto so as to be available to the company once again at the time of, as well as subsequent to, its reentry into the State. For purposes of this determination, the status of the taxpayer's certificate of authority, while not controlling, is, nevertheless, noteworthy, particularly in a case such as the present one where the surrendering of the taxpayer's first such certificate was in fact accompanied by a cessation of its business activity in Pennsylvania and where the issuance of its second such certificate was predicated upon the company's reentry into this State for the purpose of resuming its business activities here. We are satisfied that in a case such as this, wherein both of the above factors can be shown to coincide and even to go hand in hand as the company's Pennsylvania history unfolds, we may properly conclude that the company's first withdrawal worked a final, unconditional termination of its franchises and privileges in this State and that the subsequent issuance of a new certificate, therefore, constituted a new grant of authority sufficient to bring it clearly within the purview of subsection (b) of the statutory definition here under consideration." 92 Dauph. at 304-5.

318

This authoritative pronouncement establishes the rule that once a qualified corporation withdraws its certificate of authority and ceases business activities, it loses its previously paid foreign excise tax credit and cannot sustain that credit in limbo to be used at some future time upon recertification to do business in Pennsylvania.

Appellant asserts that its warehousing activities between 1960 and 1965 somehow take its facts outside of the *American Metal Climax* holding. These warehousing activities are likened to the situation in *Commonwealth v. 2101 Cooperative, Inc.*, 78 Dauph. 76 (1961), where the Court of Common Pleas of Dauphin County found that a foreign corporation without a certificate of authority but operating in Pennsylvania on the basis of a power of attorney on file with the Department of State was sufficiently involved in intrastate business to be liable for foreign excise taxes on its capital.

"We believe it would be unrealistic that two foreign corporations, alike in the essential respect that they both have acquired the privilege of doing business in Pennsylvania, are nevertheless to receive dissimilar tax treatment simply because one has received a particular document and the other has not. Such a construction would result in a constitutionally fatal lack of uniformity of taxation in disregard of the policy of the courts to interpret a statute so as to avoid an unconstitutional result." 78 Dauph. at 80-81.

Appellant would have us conclude that the *2101 Cooperative* decision stands for the proposition that any corporate presence in Pennsylvania may form a legally sufficient basis for concluding that the subject corporation is doing business in Pennsylvania. Following this logic, appellant would have us conclude further that the issuance of a certificate of authority is incidental to a legal determination as to a corporation's

presence in Pennsylvania and that, in effect, the Maryland corporation never left Pennsylvania in 1960. The *American Metal Climax* holding would therefore not apply since the Maryland corporation as Hunter-Wilson, then as Henry Kelly and finally as Huntington Creek-Maryland was continuously "doing business" in Pennsylvania.

We do not agree that the *2101 Cooperative* decision stands for the proposition appellant advances nor could we subscribe to it if it did. While the holding of a certificate of authority may not be conclusive evidence of "doing business" in Pennsylvania, it does trigger foreign excise tax liability. Such liability may be found to exist without certification under unusual circumstances but no case law points to the possibility of no liability with certification where capital is employed in Pennsylvania.

Foreign excise tax liability attaches upon qualification to do business here. The warehousing of whiskey within our borders does not create or continue such liability and therefore the credit which appellant tries to keep alive during the hiatus between the withdrawal of certification and recertification five years later cannot be countenanced by the Court consistent with the *American Metal Climax* holding. Section (b) requires that the total amount of capital be considered in calculating the tax due and Section (a) does not apply when the corporation-taxpayer has unequivocally withdrawn from the Commonwealth. Incidental business activities within the Commonwealth during a period of nonqualification cannot sustain the credit for taxes previously paid when such credit was so clearly denied as legislatively intended and constitutionally sanctioned in the *American Metal Climax* opinion.

"Under our view of the case, the Commonwealth is collecting two separate taxes, one each on two separate

exercises of a privilege. It is not, as appellant contends, collecting the tax twice on a single continuing exercise of that privilege." 92 Dauph. at 305.

The second credit claimed by Huntington Creek-Maryland arises from the 1962 merger of Leroux into Huntington Creek-Pennsylvania. Leroux, as a foreign corporation, had qualified to do business in Pennsylvania by acquiring a certificate of authority in 1960. Along with other corporate tax reports, Leroux filed foreign excise tax reports until its 1962 merger and paid tax on the greatest amount of capital employed here, in sum $1,213,491. Huntington Creek-Maryland, incident to the 1965 merger of Henry Kelly and Huntington Creek-Pennsylvania, claims that credit because of Leroux's pre-merger business activities within the Commonwealth.

We cannot subscribe to appellant's logic in claiming the desired Leroux credit for we do not read the relevant statutory provisions as permitting such a credit. We must make clear that two mergers separate in time and legal effect are involved in this credit claim. First, Leroux, a foreign corporation, merged into Huntington Creek-Pennsylvania, a domestic corporation, in 1962; second, Huntington Creek-Pennsylvania, domestic corporation, merged with Henry Kelly, a foreign corporation, in 1965 to become Huntington Creek-Maryland. These two distinct mergers have different legal consequences for the constituent corporations and must be separately examined.

The 1962 Leroux - Huntington Creek - Pennsylvania merger resulted in a surviving *domestic* corporation. By its legal definition, a *domestic* corporation does not pay foreign excise taxes. Therefore, the law applicable to any excise tax credit arising from the 1962 merger resulting in a *domestic* corporation is not the Foreign Excise Tax Act of July 25, 1953, 72 P.S. §1861

et seq., but rather the Domestic Excise Tax Act of July 25, 1953, P. L. 564, 72 P.S. §1827.3 et seq. Under the *domestic* excise tax provisions, after a merger the surviving domestic corporation may employ the following credits:

"An excise tax of one fifth of one per centum is hereby imposed for State purposes for the privilege of exercising corporate franchises or other powers or privileges within this State, as follows:

". . . .

"(f) In the case of the merger or consolidation of two or more corporations, upon the amount of the authorized capital stock or stated capital of the new or merged corporation in excess of the greatest amount of the authorized capital stock or both, of the several corporations so merging or consolidating, upon which bonus has been theretofore paid under prior laws or upon which the excise tax has theretofore been paid under the provisions of this act: *Provided, that in case of the merger or consolidation of a foreign corporation which has any part of its capital actually employed within this State with a domestic corporation, such new or merged or consolidated corporations shall be entitled to credit upon any tax when due and payable for the amount of bonus or excise tax theretofore paid by such foreign corporation upon the amount of the capital actually employed within the State of Pennsylvania.*" (Emphasis added)

The surviving domestic corporation, Huntington Creek-Pennsylvania, could utilize Leroux's previously paid *foreign* excise taxes as a credit against its then-existing *domestic* excise tax liability, if any. The filed stipulation is silent as to the excise tax responsibility of Huntington Creek-Pennsylvania in 1962 following the Leroux merger. Such tax liability, if any, is therefore not before this Court. Since no petition for re-

settlement or review was filed incident to that 1962 merger, we must assume for the purposes of this appeal that both the Commonwealth and the domestic taxpayer were satisfied with any tax settlement made at that time. No credit or liability for tax as to Huntington Creek-Pennsylvania resulting from the 1962 merger appears on the record before us.

The 1965 merger of Huntington Creek-Pennsylvania, a domestic corporation, into a foreign corporation is the one which is the subject of the appeal before us and we need only to examine the constituent corporations entering into this merger to determine what credits against excise tax liability, if any, result. It is noteworthy that unlike the unrelated 1962 merger described above the surviving corporation in 1965 is a *foreign* corporation liable by definition for *foreign* excise taxes. The controlling statute in such circumstances is the 1963 amendment to the Act of July 25, 1953, 72 P.S. §1861 et seq., which permits various credits.

"Provided, That credit shall be allowed for said excise tax in the following cases:

"(1) Merger of domestic corporation or corporations and/or foreign corporation or corporations with a foreign corporation and the surviving foreign corporation in the merger is then authorized, or will immediately thereafter be authorized, by a certificate of authority to transact business in this Commonwealth;

"(2) Consolidation of two or more foreign corporations or of domestic and foreign corporations (one or more of each), and the corporation formed by the consolidation is a foreign corporation which is then authorized, or will immediately thereafter be authorized, by a certificate of authority to transact business in this Commonwealth.

"In such cases, the surviving or consolidated foreign corporation shall be entitled to credit upon any excise

tax due and payable hereunder equal to the excise tax computed at the rate of one-third of one per centum on the value of the assets of the merging or consolidating foreign corporation or corporations actually employed by such surviving or consolidated foreign corporation wholly within this Commonwealth within the provisions and intent of this act, and such proportion of the total bonus and/or excise tax of the merging or consolidating domestic corporation or corporations paid or relieved from payment on its authorized or issued and outstanding capital stock, determined by the ratio that the value of the assets of such domestic corporation or corporations actually employed by such surviving or consolidated foreign corporation within this Commonwealth within the provisions and intent of this act bears to the value of the total assets of such domestic corporation."

The 1963 amendment describes a situation where a foreign corporation survives the merger and allows credits for *foreign* excise taxes paid by constituent *foreign* corporations and for *domestic* excise taxes paid by constituent *domestic* corporations according to different credit formulas. In the 1965 merger, a *domestic* corporation, Huntington Creek-Pennsylvania, merged into a surviving *foreign* corporation, Huntington Creek-Maryland. Leroux was not a party to this merger having been merged into a domestic corporation in 1962. Therefore, no credit could flow from Leroux three years after it terminated its existence as a foreign corporation. The only conduit by which a credit could flow to the surviving foreign corporation under the above statutory provisions would be via the then-existing domestic corporation, Huntington Creek-Pennsylvania. Nowhere in the stipulation or in their briefs does the appellant refer to or claim any direct credit from that source.

The Leroux credit is claimed through its domestic successor but no authority in statute or in case law is cited to support the proposition that a domestic corporation receiving an excise tax credit from a merged foreign corporation may retain that credit into the future against some later excise tax liability upon its merger into another foreign corporation. Leroux ceased to exist in 1962 and was not a separate party to the 1965 merger; therefore, no separate credit from it can be sustained at the time of the 1965 merger.

## CONCLUSIONS OF LAW

1. During the tax year 1966, the Huntington Creek Corporation, a Maryland corporation, which qualified to do business in Pennsylvania by receiving a certificate of authority on August 31, 1965, was properly treated as falling within the statutory definition of a foreign corporation admitted to do business in Pennsylvania after the effective date of the Foreign Excise Tax Act of July 25, 1953, P. L. 560, 72 P.S. §1861 et seq.

2. During the tax year 1966, the Huntington Creek Corporation, a Maryland corporation, could not claim any credit against the greatest amount of capital employed in Pennsylvania resulting from previous foreign excise taxes paid by its predecessor corporation, Hunter-Wilson Distilling Company, Inc., which withdrew its certificate of authority to do business in Pennsylvania on June 3, 1960.

3. The warehousing of whiskey barrels in Pennsylvania by Henry Kelly Importing and Distributing Company, Inc., successor corporation to Hunter-Wilson Distilling Company, Inc. and predecessor corporation to the Huntington Creek Corporation (Maryland), between 1961 and 1965 does not constitute doing business in Pennsylvania for the purposes of sustaining a for-

eign excise tax credit between the withdrawal of a certificate of authority to do business in Pennsylvania and the renewal of such certificate by the same foreign corporation.

4. The 1962 merger of Leroux and Company, Inc., into the Huntington Creek Corporation, a Pennsylvania corporation, is for excise tax purposes subject to the provisions of the Domestic Excise Tax Act of July 25, 1953, P. L. 564, 72 P.S. §1827.3 et seq.

5. Any credit against excise tax liability resulting from the 1962 merger is controlled by the Domestic Excise Tax Act of July 25, 1953, P. L. 564, 72 P.S. §1827.3 et seq.

6. The 1965 merger between the Huntington Creek Corporation, a Pennsylvania corporation, and Henry Kelly Importing and Distilling Company, Inc., a Maryland corporation, resulting in a surviving Maryland corporation, the Huntington Creek Corporation, could result in credits against foreign excise tax liability only from its constitutent corporations under the Foreign Excise Tax Act of July 25, 1953, P. L. 560, 72 P.S. §1861 et seq.

7. Leroux and Company, Inc. was not a constituent corporation in the 1965 merger and therefore no foreign excise tax credit may be claimed through it.

8. The Department of Revenue properly denied the claims for credits of $9,969,375 resulting for excise taxes paid by Hunter-Wilson Distilling Company, Inc. and of $1,213,491 for excise taxes paid by Leroux and Company, Inc., against the greatest amount of capital employed in Pennsylvania during the tax year 1966 by the Huntington Creek Corporation, a Maryland corporation, in the amount of $15,969,375.

9. The appeal of the Huntington Creek Corporation, a Maryland corporation, is dismissed and the resettlement of the Board of Finance and Revenue in the amount of $53,181.25 is sustained.

In accordance with the foregoing conclusions, we make the following

### ORDER

Now, September 5, 1972, the above appeal of the Huntington Creek Corporation, a Pennsylvania corporation, from the action of the Board of Finance and Revenue denying a petition for review of the Department of Revenue's settlement of appellant's Foreign Excise Tax liability for the tax year 1966 in the amount of $53,181.25 being one-third of one percent of $15,969,375, the greatest amount of capital employed in Pennsylvania during the tax year, is hereby dismissed. Unless exceptions are filed within thirty (30) days of the filing of this order, the Chief Clerk is directed to enter judgment in favor of the Commonwealth and against the Huntington Creek Corporation, a Maryland corporation, in the amount of $53,181.25, and mark the same satisfied as appellant has previously paid said amount.