## TOWN OF FREEPORT

### v.

### Lawrence GREENLAW.

Supreme Judicial Court of Maine.

Argued Nov. 20, 1991.
Decided Feb. 11, 1992.

Christopher Vaniotis (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for plaintiff.

Warren M. Turner (orally), Yarmouth, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Defendant Lawrence Greenlaw appeals from a summary judgment entered in favor of plaintiff Town of Freeport in its action against Greenlaw for a violation of the town zoning ordinance pursuant to 30-A M.R.S.A. § 4452 (Pamph.1991). The Superior Court (Cumberland County, *Alexander, J.*) ordered Greenlaw to remove picnic tables and a concrete platform in front of his building unless and until they were approved by the Town. The court also assessed a $250 civil penalty and ordered Greenlaw to pay attorney fees to the Town in the amount of $5000. Because the court impermissibly precluded Greenlaw from raising the defense that the picnic tables were a legal nonconforming use, and because there remains a genuine issue of material fact as to whether there is a concrete platform that violates the zoning ordinance, we vacate the judgment.

Greenlaw owns a building on Maine Street (U.S. Route 1) in Freeport. The building, commonly known as The Pantry, has been in operation as a retail store, bakery, and restaurant since 1984. For the past five or six years, Greenlaw and his lessees would in the warm months place a few picnic tables in front of the store for use by their customers. Approval from the Town for the use of the tables was neither sought nor given, nor, prior to April of 1990, did the Town object.

Because Greenlaw's lot contains fewer parking spaces than are required by current ordinances, the operation of the building as a business is a nonconforming use.[1]

In April 1989, Greenlaw consulted with Fred Reeder, the Town Code Enforcement Officer, concerning uses of the building permitted under the zoning ordinance. Reeder responded by letter and cautioned Greenlaw that any use that required additional parking, such as an expansion of seating capacity, would not be allowed.

In April 1990, Greenlaw approached Reeder about the possibility of constructing a raised wooden deck in front of the building upon which to place picnic tables. Around the same time, Greenlaw placed picnic tables in front of the building for use by his customers as he had done for several years. On April 24, 1990, Reeder sent a certified letter in response to Greenlaw's inquiry that read as follows:

Dear Larry:

I will put your proposed deck on the agenda for Design Review. However, it is considered a structure, an expansion of your existing use and would require Site Plan Review by the Planning Board. Until that is accomplished, please be advised that you cannot increase your seating in or out of that building. The picnic tables which you propose and which have shown up on your lot are *not* permitted and must be removed immediately until you have obtained approval to add them. I cannot stress enough that it would be a violation of the ordinance to increase your seating, and it cannot be allowed to happen. Please remove the tables and seats upon receipt of this letter.

(Emphasis in original.)

Greenlaw withdrew his application for the outdoor deck but did not remove the tables in front of his building. Shortly afterward, Greenlaw, under order of the Department of Environmental Protection, removed some unused gasoline storage tanks on the property.[2] Greenlaw resurfaced the area disturbed by the excavation with a concrete slab raised to the level of

---

1. In March of 1989, Greenlaw filed an application with the Town for a proposed enlargement of his building and the creation of additional parking spaces. The record reflects that the

application has not been pursued and is still pending.

2. Greenlaw's property had been used as a gasoline service station in the past.

the store's front step, making entrance easier. Subsequently, the parking area was paved to match the height of the concrete slab. The picnic tables remained on the concrete slab. There was no further communication between Greenlaw and Reeder.

On May 31, 1990, the Town's attorney wrote to Greenlaw and advised him that the Town was preparing to file an enforcement action in the Superior Court but would refrain from doing so if the tables were removed. Because he believed the use of the tables was grandfathered, Greenlaw refused to remove them. On June 8, 1990, the Town's attorney again wrote to Greenlaw informing him that the Town would not ignore deliberate disregard of its ordinance but would engage in discussion if the tables were removed. On June 11, 1990, the Town filed a complaint against Greenlaw seeking injunctive relief, civil penalties, and attorney fees.

The Superior Court granted the Town's motion for summary judgment on both counts of the complaint, ordering removal of the picnic tables and the concrete platform unless approval was received from the Town. *See* 30–A M.R.S.A. § 4452(3)(C). The court also imposed a civil penalty of $250, *see* 30–A M.R.S.A. § 4452(3)(B), and awarded attorney fees of $5000 to the Town. *See* 30–A M.R.S.A. § 4452(3)(D). Greenlaw appealed following the denial of his motion to alter or amend the judgment.

■ On appeal from a grant of summary judgment, we view the evidence in the light most favorable to the party against whom judgment was granted and review the trial court's conclusions for errors of law. *St. Louis v. Hartley's Oldsmobile–GMC,* 570 A.2d 1213, 1215 (Me.1990). A party is entitled to summary judgment only if there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. *Saltonstall v. Cumming,* 538 A.2d 289, 290 (Me.1988); M.R.Civ.P. 56(c).

■ Greenlaw contends that summary judgment should not have been granted because the court never addressed his defense that the use of the picnic tables was permitted because it was grandfathered. In defending the summary judgment, the Town contends that Greenlaw is precluded from raising the grandfathered issue because he did not take any action to appeal the directive to remove the picnic tables given to him in the April 24, 1990 letter. Because that letter constitutes an order within the meaning of Section 601(A) of the Freeport Zoning Ordinance, the Town argues, Greenlaw was required to appeal it to the Freeport Zoning Board of Appeals (ZBA). By not taking that appeal to the ZBA, the Town contends, Greenlaw failed to exhaust his administrative remedies and could not raise in the Superior Court any issue that he could have raised before the ZBA. We disagree and hold that, because the April 24 letter did not constitute sufficient notice of his right to appeal the directive and the consequences of the failure to do so, Greenlaw should not be precluded from raising the grandfathered issue before the Superior Court.

■ The Code Enforcement Officer (CEO) is charged with the duty of enforcing the provisions of the Freeport Zoning Ordinance. Section 601(A) of that ordinance provides in pertinent part:

> If the Codes Enforcement Officer shall find that any of the provisions of this Ordinance are being violated, he shall notify in writing the person responsible for such violations, indicating the nature of the violation and ordering the action necessary to correct it.

The ordinance further provides that appeals from decisions of the CEO are to be taken to the Zoning Board of Appeals and must be commenced within thirty days of the order, decision, interpretation or ruling. *See* Freeport, Me., Zoning Ordinance § 601(G)(4)(a) (Feb. 1976).

We agree with Greenlaw's contention that in the circumstances of this case the letter was insufficient to constitute an order from which appeal had to be taken or rights forever lost. Although the letter informed Greenlaw that he could not increase the seating on his property, and required him to remove the tables, it was one communication among several between Greenlaw and the CEO and was written in

response to an inquiry about constructing a raised wooden deck on Greenlaw's property. The letter was not captioned as an order, decision, or ruling. It cited no provision of the ordinance being violated, and did not inform Greenlaw of his right to appeal and to whom an appeal must be taken. Nor did the letter notify Greenlaw of the consequences of his failure to appeal.

■ The failure to appeal from an adverse decision of a municipal code enforcement officer can constitute a failure to exhaust administrative remedies and serve to silence protestations by an aggrieved party that the court failed to decide the merits of substantive issues. *See Town of Shapleigh v. Shikles*, 427 A.2d 460, 466 (Me.1981) (failure to appeal order of code enforcement officer to ZBA described as failure to exhaust administrative remedies).[3] In the instant matter, however, the CEO's letter was not sufficient to alert Greenlaw to the fact that pursuit of an administrative remedy or municipal appeal was necessary to protect his rights. Whether Greenlaw is prohibited from raising in this plenary zoning enforcement action the defense that his use of the picnic

tables is grandfathered is really a matter of issue preclusion based upon principles of administrative *res judicata.*

■ Principles of *res judicata* apply to administrative proceedings on both the state and municipal levels. *Town of North Berwick v. Jones*, 534 A.2d 667, 670 (Me. 1987) (applying *res judicata* to final determination reached by municipal agency); *Restatement (Second) of Judgments* § 83 (1980); *see also Fitanides v. Perry*, 537 A.2d 1139, 1140 (Me.1988). In order for *res judicata* to apply to administrative proceedings, however, the administrative proceeding must entail the "essential elements of adjudication." *Jones*, 534 A.2d at 670. Included in those essential elements is adequate notice. *Restatement (Second) of Judgments* § 83(2)(a). The notice required by the *Restatement* in order for *res judicata* to apply is set out in section 2.[4] What constitutes acceptable notice may vary according to the circumstances, but in order to have a preclusive effect, the notice should state the nature of the action and inform the recipient of the opportunity to object and of the consequences of a failure to heed the notice. *See Restatement (Second) of Judgments* § 2, comment (b).[5]

3. *Town of Shapleigh v. Shikles*, 427 A.2d 460 (Me.1981), relied upon by the Town is distinguishable from the instant matter. *Shikles* involved a stop-work order served on the owners by the CEO after the issuance and subsequent revocation of a building permit. The CEO informed the owners that unless corrective action was taken by a certain date, they would be subject to daily fines of $100 if found guilty of violating a section of the zoning ordinance that was specifically cited. Notwithstanding this notification, the owners failed to appeal the revocation of the building permit to the local ZBA. When curative steps were not forthcoming, the town brought suit and secured an injunction. We held that the owners were in no position to claim aggrievement from the Superior Court judgment because they failed to exhaust an available administrative remedy. *Id.* at 466. The issue of the adequacy of the notice was not raised.

4. *Restatement (Second) of Judgments* § 2 (1980) provides in pertinent part
   (1) Except as stated in Subsections (2), (3), and (4) [not applicable] notice is adequate only if:
     (a) The notice is official in tenor, and states that the action is pending or about to

be commenced and that there is opportunity to be heard concerning it and affords a reasonable time in which that opportunity may be exercised[.]

5. The notice referred to in the *Restatement* and in the Maine Administrative Procedure Act, *see infra* note 7, is notice of the pendency or commencement of an adjudicatory proceeding. In order for an adjudicative determination by an administrative agency to have a conclusive, and thus preclusive, effect, the party to be bound must have received prior adequate notice that a proceeding was taking place and that his or her rights would be affected by that proceeding.
  At issue in the instant matter, however, is notice of violation of a zoning ordinance and notice of a right to appeal such an order. We find that the logic and underlying principle of fundamental fairness embodied in section 83 of the *Restatement* applies with equal cogency to the present case. Certainly, if one is to be precluded from asserting an argument in court for failure to exhaust available administrative remedies, one should have first received adequate notice of violation sufficient to inform one of the time limits in which to pursue such remedies.
  We also find that principles governing default judgments are somewhat analogous. In effect,

 Similarly, the notice requirements set out in the Maine Administrative Procedure Act, although not binding in this action,[6] are instructive and provide a reasonable guide as to what a notice should contain in order to trigger the application of administrative *res judicata*.[7] Minimally, to be effective in triggering the running of an appeal period, an order to refrain from taking or continuing certain action because it violates a zoning ordinance should refer to the provisions of the ordinance allegedly being violated, inform the violator of the right to dispute the order and how that right is exercised by appeal, and specify the consequences of the failure to appeal. *Cf.* M.R.Civ.P. 80K(c)(1) (content of land use citation and complaint). The April 24, 1990 letter from the CEO did none of that. Because of the inadequate notice, Freeport's administrative procedures (that the Town argues were not invoked by Greenlaw, thus triggering the doctrine of exhaustion of administrative remedies) lacked "essential elements of adjudication." *Jones,* 534 A.2d at 670. Greenlaw's failure to appeal the CEO's directive, therefore, does not preclude him from raising before the Superior Court the defense that his use of the picnic tables is grandfathered.

 The court also granted the Town's request and ordered Greenlaw to remove a concrete platform from his property.[8] The Town contends that the slab is a raised platform and its construction constitutes a violation of the zoning ordinance. Greenlaw's affidavit, however, while admitting the presence of a concrete surface on the property, states that the entire area surrounding the concrete section has been resurfaced at sidewalk height, thus generating a material issue of fact as to whether any platform has been created. Summary judgment on the issue, therefore, was inappropriate. M.R.Civ.P. 56(c).

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

Greenlaw was defaulted by his failure to appear before the Freeport ZBA. It is elementary that a default judgment is invalid in the absence of an adequate notice and a fair opportunity to defend. *See generally Restatement (Second) of Judgments* § 65, comment b (1980); 49 C.J.S. *Judgments* § 192 (1947).

**6.** The Maine Administrative Procedure Act, 5 M.R.S.A. §§ 8001–11008 (1989 & Supp.1991), applies to adjudicatory proceedings involving state agencies. *See* 5 M.R.S.A. § 8002.

**7.** 5 M.R.S.A. § 9052(4) provides in pertinent part:

   **4. Notice.** Notice shall consist of:

**A.** A statement of the legal authority and jurisdiction under which the proceeding is being conducted;
**B.** A reference to the particular substantive statutory and rule provisions involved;
**C.** A short and plain statement of the nature and purpose of the proceeding and of the matters asserted;
**D.** A statement of the time and place of the hearing, or the time within which a hearing may be requested[.]

**8.** Because the concrete slab was put in by Greenlaw subsequent to April 24, 1990, the CEO's letter to Greenlaw made no reference to it.