COMMONWEALTH of Pennsylvania
and Marlborough Township

v.

Edward DeLOACH and Marie DeLoach
(Husband and Wife), Appellants.

Commonwealth Court of Pennsylvania.

Argued May 4, 1998.
Decided June 18, 1998.

Christopher Meinzer, Pennsburg, for appellants.

Marc D. Jonas, Norristown, for appellees.

Before PELLEGRINI and FLAHERTY, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

Edward and Marie DeLoach (Landowners) appeal from an order of the Court of Common Pleas of Montgomery County (trial court) finding that each of them had violated the Marlborough Township Junkyard Ordinance (Junkyard Ordinance)[1] for each and every day between August 15, 1995 and May 5, 1996, by allowing the creation of a nuisance on their property and imposing $535,000.00 in fines and costs.

In 1961, Landowners purchased approximately 25 acres located at 3770 Gerryville Pike (Property) in Marlborough Township (Township), Montgomery County, on which they operated a junkyard. In 1991, Landowners entered into a lease-purchase agreement (Agreement) with Raymond Coakley (Tenant) for the property and, under the Agreement, envisioned that Tenant would continue the operation of the junkyard. The Agreement required Tenant to only accept tires with permission from the governmental authorities, and if Tenant did not ultimately purchase the Property, he was required to remove all tires from the Property at the end of the lease period.[2] When the Agreement was executed, there were approximately 2,000 tires already on the Property.

Sometime in 1993, Tenant began accumulating a large amount of tires on the Property and by May of 1995, over 500,000 tires were on the Property.[3] On numerous occa-

---

1. The Junkyard Ordinance (Ordinance 66–6), enacted on April 14, 1966, regulates junk dealers, the establishment and maintenance of junkyards and provides penalties for violations of the Ordinance. The Ordinance was amended in 1992 and again in 1993. The Ordinance provides, in pertinent part, that the licensed premises shall:

    (a) ... be maintained so as not to constitute a nuisance or a menace to the health of the community or of residents nearby or a place for the breeding of rodents and vermin.

2. Under the addendum to the Agreement, "special clause" B provides: "Buyer agrees to re-

move all tires from said property at the end of the lease period if he does not make final settlement as per lease purchase agreement." Another clause contained in the addendum provides: "Buyer agrees not to accept any tires excepting [sic] with permission from applicable government authorities."

3. Because of the large number of tires and the environmental hazard posed by them, the Pennsylvania Department of Environmental Protection removed the tires at a cost of $280,000.00.

sions between August 1995 and March 1996, the Township inspected the Property because the tires had become a breeding ground for rodents and mosquitoes. As a result, the Township issued 265 citations to Mr. De-Loach and another 265 citations to Mrs. De-Loach, charging each of them with violating the Junkyard Ordinance for creating a nuisance by allowing the accumulation of and improper storage of tires on the Property for each and every day between August 15, 1995 and May 5, 1996.

All 530 citations were delivered in three groups to Gerald Mullaney, Esquire (Mullaney), who was the attorney representing Landowners in their effort to evict Tenant from the Property. Mullaney asked the Township officials to deliver all citations to him instead of to the Landowners personally.[4] After a hearing before a district justice, Landowners were each found guilty of 265 violations of the Junkyard Ordinance and were ordered to pay fines and costs that together amounted to $535,000.00. Landowners appealed those convictions to the trial court.

At the *de novo* hearing before the trial court, Landowners agreed that the accumulation of tires on the Property violated the Junkyard Ordinance and constituted a nuisance, but maintained they could not be held criminally liable because they had no knowledge that Tenant's activities were illegal, and once they did find out, they promptly evicted him from the Property. Mr. DeLoach testified that while he was aware that Tenant was storing tires on the Property and had spoken with Tenant about the tires, he thought Tenant was doing so legally and had obtained all necessary licenses from the appropriate authorities. At the close of trial, the trial court found Landowners guilty of violating the

Junkyard Ordinance and ordered them to pay fines and costs in the amount of $535,-000.00. Landowners then appealed to the Superior Court, which transferred the case to this Court.[5]

Although proceedings pursuant to municipal ordinance violations are civil in nature, where there is a provision in the ordinance that provides for imprisonment upon conviction or failure to pay a fine, they are treated as criminal proceedings and are governed by the Rules of Criminal Procedure. *Town of McCandless v. Bellisario,* —— Pa. ——, 709 A.2d 379 (1998); *City of Philadelphia v. Pennrose Management Co.,* 142 Pa.Cmwlth. 627, 598 A.2d 105 (1991), *petition for allowance of appeal denied,* 530 Pa. 661, 609 A.2d 169 (1992). The person or persons charged with violating the ordinance for which imprisonment is available enjoys the same protections that are available to defendants in traditional criminal prosecutions. *In Re Investigating Grand Jury of Philadelphia County,* 496 Pa. 452, 437 A.2d 1128 (1981). Because the Junkyard Ordinance provides that upon default of the payment of the fine imposed, a person violating it may be sentenced to a maximum of five days in the Township lockup or to a maximum of thirty days in the county jail,[6] the present case is a criminal proceeding governed by the Rules of Criminal Procedure.

### I.

Initially, Landowners contend that the citations should have been dismissed because service was defective when the citations were filed before the district magistrate. They contend that the Rules of Criminal Procedure require that service of the citations must be made on them person-

---

4. The first group of citations covering violations from August 15, 1995 through February 20, 1996, was sent to Mullaney on April 4, 1996; the second group of citations covering violations from February 21, 1996 through April 10, 1996, was delivered on April 10, 1996; and the third group of citations covering violations from April 10, 1996 through May 5, 1996, was delivered on May 10, 1996.

5. Our scope of review of a trial court's determination of an appeal of a summary conviction is

limited to determining whether there has been an error of law or whether the findings of the trial court are supported by competent evidence. *Commonwealth v. Harchelroad,* 154 Pa.Cmwlth. 259, 623 A.2d 878 (1993), *petition for allowance of appeal denied,* 535 Pa. 649, 633 A.2d 153 (1993).

6. Ordinance 92–3 § 1 (September 14, 1992), *as amended,* Ordinance 66–6 § 10.

ally and not, as here, on an attorney who was representing them in another matter. Pa. R.Crim. P. 80(a) does provide that:

> Citations, summonses and trial notices in summary cases may be served either personally upon the defendant or by mail to the defendant's last known address.

However, when a Rule of Criminal Procedure has not been followed, the charges against a defendant shall not be dismissed unless the defendant raises the defect at trial and the defect is prejudicial to the defendant. Pa. R.Crim. P. 90. We have held that the party raising the defect has the burden of showing that he suffered "manifest and palpable" harm from the noncompliance with the Rules of Criminal Procedure. *Blosenski Disposal Service v. Department of Environmental Resources,* 116 Pa.Cmwlth. 315, 543 A.2d 159 (1988), *petition for allowance of appeal denied,* 522 Pa. 579, 559 A.2d 40 (1988), *cert. denied,* 493 U.S. 848, 110 S.Ct. 145, 107 L.Ed.2d 103 (1989).[7] Although service was not made either personally or by mail, Landowners admitted at trial that they had knowledge of the citations and discussed them with Mullaney. Moreover, they appeared to defend against the citations before the district magistrate, took a timely appeal to the trial

court and appeared before the trial court. Because Landowners had actual notice of the citations and were not prejudiced in any way by the failure to have the citations served upon them personally or by mail, the trial court properly held that any defect in service was harmless and they are not entitled to dismissal of the citations on this basis.[8]

## II.

The central issue in this appeal is whether the court erred in finding Landowners, as owners of the Property, absolutely liable for violating the Junkyard Ordinance even though the violation was the result of the acts of Tenant.[9] Surprisingly, there are no Pennsylvania cases dealing with the liability of owners of property out of possession, and there is sparse case law from other jurisdictions addressing this issue. The cases that have addressed this issue have adopted the standard that the owner can be held criminally liable for violations created by the tenant if the owner knowingly allows the premises to be used for a prohibited purpose. The liability is imposed because a landowner is deemed to have a right to seek eviction under the lease whether it was mentioned in the lease or not. *See City of Webster Groves*

---

7. Our holding was based on Pa. R.Crim. P. 150, the predecessor to Rule 90. Our Superior Court reiterated this view under Rule 90 in *Commonwealth v. McGinley,* 386 Pa. Superior Ct. 547, 563 A.2d 518 (1989), quoting from our decision in *Blosenski.*

8. Landowners also contend that the citations were defective because they were not timely filed as the first violation with which they were charged occurred on August 15, 1995, yet the citation was not issued until April 4, 1996. This issue is waived because it is untimely. Landowners did not raise this issue until they filed the Statement of Matter Complained of pursuant to Pa. R.A.P.1925(b). Issues not raised at trial cannot be raised in Statement of Matters Complained of. *Rutledge v. Department of Transportation,* 97 Pa.Cmwlth. 98, 508 A.2d 1306 (1986). In any event, Section 5552 of the Judicial Code provides that the time period for issuing a citation for a summary offense is two years. 42 Pa.C.S. § 5552.

9. Landowners contend that they cannot be held criminally liable for the acts of Tenant both because the Junkyard Ordinance is ambiguous as to whether owners can be held liable in nuisance for the acts of their tenant, and because Tenant

was the one to whom the license was issued so he should be the only one liable for violation of the Junkyard Ordinance. This contention appears to be based on Landowners' mistaken reliance on the previous version of the Junkyard Ordinance that defined a "license" as the "permit granted to a person who accumulates, stores, disposes of junk as herebefore defined." The current version of the Junkyard Ordinance enacted in 1993 provides that both the junkyard operator and the owner of the land on which the junkyard is located are to be jointly and severally liable for any violation of the Junkyard Ordinance. Section 2 of Ordinance 93–2 *amending* Section 2.H of the Junkyard Ordinance provides in pertinent part:

> H. *License.* Shall mean the permit granted to a person who accumulates, stores, or disposes of junk as hereinbefore defined *and to a person who owns property* on which junk, as hereinbefore defined, is accumulated, stored or disposed of. (Emphasis added).

Ordinance 93–2 (June 14, 1993), *as amended,* Ordinance 66–6. Moreover, Section 4 of the Ordinance provides:

> *Application for a license . . . . Both the owner and operator* are jointly responsible for compliance with the terms of this ordinance.

v. *Erickson,* 789 S.W.2d 824 (Mo.Ct.App. 1990); *People v. Scott,* 26 N.Y.2d 286, 309 N.Y.S.2d 919, 258 N.E.2d 206 (N.Y.1970); Rathkopf, *The Law of Zoning and Planning,* Section 56.01(2) (1989).

This standard for the imposition of criminal liability involving a penalty is similar to the imposition of civil liability of an owner for actions taken by a tenant. Section 837 of the Restatement (Second) of Torts provides:

(1) A lessor of land is subject to liability for a nuisance caused by an activity caused upon the land while the lease continues and the lessor continues as owner, if the lessor would be liable if he has carried on the activity himself and

a) at the time of the lease the lessor consents to the activity or knows or has reason to know that it will be carried on, and

b) he then knows or should know that it will necessarily involve or is already causing a nuisance.

RESTATEMENT (SECOND) OF TORTS § 837 (1990). *See also Philadelphia Chewing Gum Corp. v. Department of Environmental Resources,* 35 Pa.Cmwlth. 443, 387 A.2d 142 (1978), *aff'd in part and dismissed in part sub nom. National Wood Preservers v. Department of Environmental Resources,* 489 Pa. 221, 414 A.2d 37 (1980) (in a civil abatement proceeding). *See generally* 58 Am. Jur.2d, Nuisances §§ 113–124 (landlord can be liable for a nuisance created by tenant if he has knowledge of the condition or authorizes its creation).

■ Adopting that standard and applying it to the facts of this case, the Township is required to show that Landowners had actual or constructive knowledge of the condition in order to find them guilty under the Junkyard Ordinance. While the Landowners cannot be held to be absolutely liable just because of the Tenant's conduct, the trial court found that they had knowledge of the tires being stored on their Property and there is competent evidence to support that conclusion. The Agreement between Landowners and Tenant explicitly contemplates that tires would be accepted for disposal on the Property. While Landowners testified that they did not know the extent of Tenant's

activities because Tenant would not allow them onto the Property, the trial court accepted the testimony that the tires were observable from the road. In addition, Mr. DeLoach testified that he knew Tenant was in the tire recycling business, albeit Tenant told him that he had acquired the appropriate permits and licenses. Mrs. DeLoach also testified that she was told in 1994 about the large amount of tires being stored on the Property. Because the evidence supports the finding of the trial court that Landowners had knowledge of the condition on their Property, it properly found that each Landowner violated the Junkyard Ordinance.

### III.

■ Even if they could be fined for the acts of the Tenant, Landowners also contend that each of them could not be fined individually because they owned the Property as "tenants by the entireties" and, as a separate legal entity, could only be fined once for the violation. The Township contends that this issue was waived because it was not raised before the trial court. While the issue of whether the fine was proper can only be raised after the fine is imposed, Landowners' challenge does not go to the fine but to whether they can only be cited as "tenant by the entireties" and not individually. Because that issue was present from the beginning of the proceeding, it must have been raised before the trial court and not having been raised, it is waived.

Even if it had been raised, we agree with the trial court's holding that because each Landowner was listed as an owner on the deed, each could be fined under the Junkyard Ordinance, and to allow Landowners to avoid their responsibilities under their status as "tenants by the entireties" would be "an impermissible expansion of the use of this legal fiction far beyond the purpose for which it was created."

■ When property is held by tenancy by the entireties, that does not mean a husband and wife are to be treated as a single entity for all matters regarding the property. For example, our Supreme Court in *Teslovich v. Johnson,* 486 Pa. 622, 406 A.2d 1374

(1979), held that the husband and the wife individually were each "owners" who were required to be given notice of a pending tax sale under the Real Estate Tax Sale Law because otherwise, their due process rights would be violated. Similar due process considerations are present here. Due process certainly would be violated here if they were not charged individually.

∎ In addition to authorizing a $1,000.00 per day fine for each violation, the Junkyard Ordinance provides that upon default of the payment of the fine imposed, a person violating the Junkyard Ordinance may be sentenced to the Township lockup for a maximum of five days or to the county jail for a maximum of thirty days. *See* Ordinance 92–3 § 1 (September 14, 1992), *as amended,* Ordinance 66–6 § 10. Because criminal liability is not a shared concept, separate notices have to be given to each of them; otherwise, that would mean that any jail time imposed would also be incurred by both of them if only one citation was issued. Also, if separate citations were not issued, a spouse with no knowledge could not defend against the charge on that basis. Accordingly, notwithstanding that they own the Property as ten-

ants by the entireties, because Landowners are each owners of the Property, each can be charged and fined separately for violations that occurred on the Property.

## IV.

∎ Finally, Landowners contend that the Junkyard Ordinance's penalty provision of levying a fine of $1,000.00 per day for each day of violation was improper because the Township only had authority under the Second Class Township to levy a fine of $300.00 per violation, because the increase to $1,000.00 per violation did not become effective until May 9, 1996, after the date of the violations in this case.[10] However, in 1988, the Second Class Township Code was amended to increase the maximum amount that a person could be fined for failing to maintain his or her property in accordance with a Township ordinance from $300.00 to $1,000.00.[11] While in 1995, the provision was renumbered, deleted and reenacted as Section 1601, the maximum fine remained at $1,000.00.[12] In 1996, Section 1601 was amended again, but again retained the $1,000.00 maximum fine for each violation.[13]

---

10. The Township contends that Landowners did not raise this issue until after trial in its Statement of Matters Complained of and should be considered waived. Even though they were fined $1,000.00 per violation by the district magistrate, the hearing before the trial court was *de novo* and until the penalty is imposed, Landowners had no way of knowing that the fine was in excess of what they perceived to be the statutory minimum.

11. Section 702 as amended in 1988 provided:
   The board of supervisors may prescribe fines and penalties not exceeding one thousand dollars for a violation of a building, housing, property maintenance, health, fire or public safety code or ordinance and for water, air and noise pollution violations, and not exceeding six hundred dollars for a violation of any other township ordinance, which fines and penalties may be collected by suit or summary proceeding brought in the name of the township before the justice of the peace.
   Act of May 1, 1933, P.L. 103, *as amended,* formerly 53 P.S. § 65741. Substantially the same section is now found at 53 P.S. § 66601

12. Section 1601, as amended in 1995, provided:
   The board of supervisors may prescribe fines and penalties not exceeding one thousand dollars ($1,000) for a violation of a building,

housing, property maintenance, health, fire or public safety code or ordinance and for water, air and noise pollution violations, and not exceeding six hundred dollars ($600) for a violation of any other township ordinance.... No judgment shall be imposed until the date of the determination of a violation by the district justice.
   Act of May 1, 1933, P.L. 103, *added by* Act of November 9, 1995, P.L. 350, *as amended,* 53 P.S. § 66601.

13. Section 1601 now provides:
   For an ordinance regulating building, housing, property maintenance, health, fire, public safety, parking, solicitation, curfew, water, air or noise pollution, the board of supervisors shall provide that its enforcement shall be by action brought before a district justice in the same manner provided for the enforcement of summary offenses under the Pennsylvania Rules of Criminal Procedure.... The board of supervisors may prescribe criminal fines not to exceed one thousand dollars ($1,000) per violation and may prescribe imprisonment to the extent allowed by law for the punishment of summary offenses.
   Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 66601

Because the Second Class Township Code authorized the Township to prescribe a $1,000.00 fine per violation since March 2, 1988, for the type of violation committed by Landowners, and the Junkyard Ordinance was amended in 1992 to increase the maximum fine for violations from $50.00 to $1,000.00 per violation,[14] the trial court had the authority to levy the $1,000.00 fine per violation.

Accordingly, for all the above reasons, the order of the trial court is affirmed.

### ORDER

AND NOW, this 18th day of June, 1998, the order of the Court of Common Pleas of Montgomery County at Docket No. 5381–96, dated May 1, 1997, is affirmed.

14. Section 10 of the Junkyard Ordinance as amended provides:

Any person who shall violate any provision of this Ordinance shall pay a fine and penalty of One Thousand Dollars ($1,000) which fine and penalty may be collected by suit or summary proceeding before a district justice. Each day's violation of a provision of this Ordinance shall constitute a separate offense.

Ordinance 92–3 (September 14, 1992), *as amended,* Ordinance 66–6.