2003 ME 50

**TOWN OF BOOTHBAY et al.**

v.

**Barbara JENNESS et al.**

Supreme Judicial Court of Maine.

Argued: March 5, 2002.
Decided: April 15, 2003.
Revised: May 5, 2003.

William H. Dale, Sally J. Daggett (orally), Jensen Baird Gardner & Henry, Portland, for plaintiff.

Edward G. Dardis (orally), Howard & Bowie, Damariscotta, for defendant.

Panel: SAUFLEY. C.J., and CLIFFORD, RUDMAN, ALEXANDER, and CALKINS, JJ.*

SAUFLEY, C.J.

[¶ 1] Barbara Jenness appeals from the amended judgment of the District Court (Wiscasset, *Westcott, J.*) finding Jenness in violation of the Boothbay Zoning and Building Code Ordinance, imposing a fine of one hundred dollars, and requiring Jenness to pay a portion of the Town's attorney fees and costs. Jenness contends that the Town failed to prove that she violated the ordinance. We affirm the amended judgment of the District Court.

## I. BACKGROUND

[¶ 2] Barbara Jenness is the owner of property located in the Town of Boothbay in the Maritime Commercial District. Barbara and her husband, Charles, are the owners of C & B Marina, Inc., one of the businesses that occupies this property. Another business on the property is a restaurant that the Jennesses had operated prior to its sale to Norma Weeks. In early January 1999, Barbara Jenness sold the restaurant business and leased the restaurant space to Weeks, who intended to operate the restaurant as Norma's Pub and Grub. As a provision of the lease, Jenness required Weeks to comply with all zoning ordinances.

[¶ 3] Weeks submitted an application for a Class A lounge and malt liquor license, and the Town of Boothbay approved that

license on May 10, 1999. In addition, both Jenness and the Town approved Weeks's plan to add to the existing structure, which had consisted of only a traditional dining room and kitchen for food preparation. Weeks added a second service room that featured an alcohol-serving bar. It is this room that is the center of controversy before us. Weeks ran the Pub and Grub uneventfully for approximately one year.

[¶ 4] When Weeks applied for a renewal of her liquor license in the spring of 2000, the Town investigated to determine whether Weeks was in compliance with the zoning ordinance. The Code Enforcement Officer (CEO) inspected the premises and determined, when separately considering the room that contained the bar, that Weeks was operating a barroom in violation of the ordinance. The CEO hand delivered a letter entitled "notice of violation" to Weeks, indicating that she was operating a barroom, which is a nonpermitted use in the Maritime Commercial District.

[¶ 5] On May 31, Jenness also was hand-delivered a letter entitled "notice of violation." The letter identified her property as the subject of the violation and the existence of Weeks's nonpermitted use on that property. It explained that the nonpermitted use was that of a barroom and this use was a violation of the ordinance. The letter stated: "Your continuance to allow these violations to exist, makes you a willing party to / in the violations and equally responsible." In addition, it explicitly warned that, because Jenness was the record owner of the property, "[h]aving knowledge of a violation and allowing it to continue, [she became] a party to the

---

* Dana, J., sat at oral argument and participated in the initial conference but participated no further.

violation." The letter also provided notice that the CEO had the authority to issue a notice of violation that could result in the conviction of a civil violation.[1] The CEO referenced his authority, pursuant to statute and the Town's ordinance, to enforce the zoning laws and provided copies of all the relevant provisions. The CEO also provided Jenness with a copy of the notice of violation he had delivered to Weeks. To remedy the violation, the CEO ordered Jenness: (1) to require Weeks to "discontinue the operation and use of the area used as a barroom"; and (2) to either alter the barroom back to its former condition or obtain the proper permits for a conditional or permitted use.

[¶ 6] The letter advised Jenness of her right to appeal to the Zoning Board of Appeals if she felt "aggrieved or disagree[d] with [the CEO's] decision." Finally, the letter stated: "[Y]ou must file said appeal within thirty (30) days of the subject decision or action complained of, or forever forfeit that right." Despite this notice of the right to appeal and the risk of losing that right, Jenness did not appeal the CEO's interpretation of the ordinance.

[¶ 7] Weeks did appeal the CEO's decision to the Board, arguing that it was based on a misinterpretation of the ordinance. She specifically argued that the correct interpretation required the CEO to look at the business as a whole, not isolated into separate parts. The Board concluded that the CEO's interpretation of the ordinance, and thus his determination that Weeks was operating a barroom, was correct. Weeks did not appeal the Board's decision to the Superior Court pursuant to M.R. Civ. P. 80B, but rather sought to amend the ordinance.

[¶ 8] In a letter dated July 22, written before the hearing in front of the Board, Charles Jenness, on behalf of C & B Marina and Barbara Jenness, explained to Weeks their position in regard to the pending appeal. This letter revealed that the Jennesses assisted Weeks in her appeal to the Board. His letter also informed Weeks that they did not condone her violation of the zoning code with the operation of a barroom.

[¶ 9] When Weeks and Jenness did not change their use of the "barroom," the Town subsequently filed a citation and complaint against Weeks and Jenness pursuant to M.R. Civ. P. 80K. At trial, Jenness argued that the Town's interpretation of "barroom" was incorrect, that the ordinance and enforcement statute did not apply to landlords for their tenant's violations, and that she did not personally perform any act that violated the ordinance. The District Court initially entered judgment for Weeks and Jenness on the ground that the CEO and the Board incorrectly interpreted the ordinance and Jenness had performed no affirmative act to violate the ordinance.

[¶ 10] The Town filed a motion to amend the judgment pursuant to M.R. Civ. P. 59, arguing that the failure of Weeks and Jenness to appeal the Board's decision precluded litigation of the legality of the barroom's operation. The District Court agreed that the Board's decision must be treated as administrative res judicata. The court imposed fines of one hundred dollars against Jenness and two hundred dollars against Weeks pursuant to 30–A M.R.S.A. § 4452(3) (1996 & Supp.2002), choosing not to impose daily fines for the continuing violation. The court also awarded attorney fees of $7500 to the

---

1. Although the ordinance speaks in terms of a misdemeanor, 17–A M.R.S.A. § 4–B(3) (Supp. 2002) makes the "misdemeanor" a civil violation because the ordinance does not provide a jail sentence as a penalty.

Town, with Weeks being responsible for $5000 and Jenness being responsible for $2500. Jenness filed this appeal pursuant to 14 M.R.S.A. § 1901 (2003) and M.R.App. P. 2.

## II. DISCUSSION

[¶ 11] Jenness argues that neither the decision by the Board, finding that Weeks violated the ordinance, nor Jenness's failure to appeal the CEO's letter of violation precluded her from challenging, in the separate proceeding in the District Court, the CEO's interpretation of the ordinance.

### A. Landlord's Liability for Tenant's Violation of Ordinance

[¶ 12] As an initial matter, we must determine whether Jenness, as the landlord of Weeks, can be held to have violated the ordinance by failing, after notice, to stop the ongoing violation by her tenant. Similar to many other jurisdictions, we have not had the opportunity to address whether landlords may be sanctioned for violations of municipal ordinances by their tenants. *See Commonwealth v. DeLoach,* 714 A.2d 483, 486–87 (Pa.Commw.Ct.1998). The answer lies in an exploration of statutes, ordinances, and case law.

[¶ 13] The Town's authority to penalize the landowner is grounded in statute. Statutes concerning the enforcement of land use regulation, provide that "[a]ny person, including, but not limited to, a landowner, ... who violates any of the laws or ordinances set forth in subsection 5 or 6 is liable for the penalties set forth in subsection 3." 30–A M.R.S.A. § 4452(2) (1996).

[¶ 14] The ordinance at issue draws a distinction between an owner in residence and a landlord owner. There are two distinctions within the Boothbay zoning ordinance that demonstrate the Town's intention that landlords may be sanctioned separately for actions performed on their property by their tenants. First, the ordinance contemplates separate penalties for the tenant who violates the ordinance and the landlord who owns the property where the violation occurred. *Compare* BOOTHBAY ZONING & BUILDING ORDINANCE § III(G)(1) ("Any person ... having control of any building ... who violates any of the provisions of this Ordinance ... shall be guilty of a misdemeanor, and upon conviction shall be fined not more than $100 for each offense.") *with id.* § III(G)(3) ("The Code Enforcement Officer may levy a fine of $25 against the *owner* ... for each day a violation exists.") (emphasis added).

[¶ 15] Second, the ordinance provides that an owner can be fined $100 a day for an affirmative violation of the ordinance, in contrast to the $25 a day fine for the owner whose tenant has caused the violation. *Id.* § III(G)(1), (3). This second distinction demonstrates the intention of the ordinance to hold landlords responsible for actions of their tenants regardless of whether the landlord personally participated in the violation.

[¶ 16] The consensus from the few jurisdictions that have considered the issue is that a landlord can be held responsible for the tenant's violations if the landlord (1) has knowledge of the violation, *DeLoach,* 714 A.2d at 486–87; *City of Webster Groves v. Erickson,* 789 S.W.2d 824, 826–27 (Mo.Ct.App.1990); and (2) has the power to obtain the tenant's compliance or to evict the tenant after she receives knowledge of the violation. *DeLoach,* 714 A.2d at 486–87; *People v. Scott,* 26 N.Y.2d 286, 309 N.Y.S.2d 919, 258 N.E.2d 206, 209

(1970).[2]

[¶ 17] Because the owner often benefits financially from the tenant's use of the land, through lease payments or other arrangements, and because the owner may retain a measure of control over the use of the land, it is reasonable to require an owner whose land is in tenancy to take action to comply with municipal ordinances once noncompliance has been brought to the owner's attention. Accordingly, we hold that a landlord can be held to have violated the ordinance and can be sanctioned for the continuing violation of an ordinance by a tenant when: (1) the ordinance authorizes separate penalties against a landlord; (2) the landlord has notice of the violation; (3) the landlord has a reasonable ability to control the use of the land; and (4) the landlord has been given a reasonable opportunity to obtain the tenant's compliance or eviction.

∎ [¶ 18] In the present case, the ordinance authorized a separate penalty for a landlord in violation of the ordinance. Jenness had sufficient control over the land through the lease and was given a reasonable opportunity to obtain Weeks's compliance or her eviction.[3] Finally, Jenness was on notice of Weeks's actions that were in violation of the ordinance. The CEO's letter explained why Weeks was acting in violation of the ordinance and how Jenness could be found to have violated the ordinance if she did not act to cure the violation. At the time of the trial in

2. There are several different contexts in which landowners and their tenants may each have responsibility for incidents or activity occurring on the landowner's property. The degree to which a landowner may be found responsible for the conduct of a tenant depends on the context of the particular controversy. This context will include the facts of the controversy, the substantive law that governs those facts, the sources of the governing law, and the nature of the claims asserted by the moving party.

For example, federal statutory law addresses the responsibility of a facility owner for a tenant's disposal of hazardous substances. 42 U.S.C., § 9607(a)(1) (2000). Similarly, state statutes and local ordinances may permit courts to find a landowner responsible for the conduct of a tenant on the landowner's property. See, e.g., 30–A M.R.S.A. § 3428(4)(A) (1996) (authorizing civil action against landowner for either landowner's or tenant's refusal to abate nuisance related to septic system); 30–A M.R.S.A. § 4452(2) (authorizing civil action against landowner for local land use law or ordinance violations on landowner's property); BOOTHBAY ZONING & BUILDING ORDINANCE § III(G)(3) (authorizing civil fines for the owner of land where violations occurred).

In other contexts, the common law addresses the responsibility of a landlord for a tenant's tortious conduct. See, e.g., Stewart v. Aldrich, 2002 ME 16, ¶¶ 10–17, 788 A.2d 603,

606–08 (finding landlord not subject to liability for injuries of tenant's invitee resulting from tenant's dog when injury occurred within the tenant's apartment and the landlord did not have control over dog); Chiu v. City of Portland, 2002 ME 8, ¶ 15, 788 A.2d 183, 188 (finding landlord could be subject to liability for the injuries a child suffered when the child fell out a window on the landlord's property because the landlord may have had control over the window). See also Koch v. Randall, 136 N.H. 500, 618 A.2d 283, 286 (1992) (concluding landlord may be liable for nuisance created by tenant); State v. Monarch Chems., Inc., 90 A.D.2d 907, 456 N.Y.S.2d 867, 868–69 (N.Y.App.Div.1982) (finding landlord liable for the nuisance violations by tenant). Thus, when evaluating the potential responsibility of a landowner for the conduct of a tenant, it is necessary to begin with the context in which the controversy arose.

3. Jenness advanced no argument that she lacked such authority. Indeed, the lease specifically requires that the "Tenant shall ... comply with all obligations imposed upon Tenants by applicable provisions of housing, building, and health codes...." In addition, Charles Jenness's July 22, 2000, letter on behalf of C & B Marina explains that the Jennesses did "not condone this [violation of the code]." Barbara Jenness possessed the authority to evict Weeks for land use violations and did not exercise it.

the District Court, Jenness did not contest evidence that she had notice of Weeks's violation, had received a reasonable opportunity to cure the violation, had the ability to control Weeks's use of the land through the lease provisions, and had taken no steps to obtain Weeks's compliance or eviction. The only arguments presented to the court were that the CEO was interpreting the ordinance incorrectly (by isolating the barroom) and that landlords cannot, under any circumstances, be sanctioned for violations by their tenants. The court properly concluded that the ordinance's penalty provisions were applicable to Jenness as the landlord of a tenant acting in violation of the ordinance.

B. Legal Import of CEO's Letter of Violation

■ [¶ 19] We turn then to the effect of the CEO's notice of violation. The District Court ultimately concluded that the doctrine of res judicata required it to accept the CEO's interpretation of the ordinance. This legal conclusion is subject to *de novo* review. *Bissias v. Koulovatos*, 2000 ME 189, ¶ 6, 761 A.2d 47, 49. We agree with the District Court.

■ [¶ 20] The doctrine of res judicata prevents "the relitigation of claims that were tried or *could have been tried* 'between the same parties or their privies . . . in an earlier suit on the same cause of action.' " [4] *Town of Ogunquit v. Cliff House & Motels, Inc.*, 2000 ME 169, ¶ 10, 759 A.2d 731, 735 (quoting *Blance v. Alley*, 1997 ME 125, ¶ 4, 697 A.2d 828, 829) (emphasis added). An administrative proceeding that includes the "essential elements of adjudication" is given the same preclusive effect as an adjudication in court. *Cliff House & Motels*, 2000 ME 169, ¶ 11, 759 A.2d at 735; *Town of Freeport v. Greenlaw*, 602 A.2d 1156, 1160 (Me.1992).

■ [¶ 21] If a party does not challenge an administrative order through an available appeal that contains the "essential elements of adjudication," the failure to do so may have preclusive effect upon any subsequent litigation on identical issues and claims dealt with in the administrative order. *Maines v. Sec'y of State*, 493 A.2d 326, 329–30 (Me.1985).[5] In this context, adequate notice of the proceeding and of the risk of failing to appear are "essential elements" for preclusion.[6] *See*

---

4. In the case of *Town of Freeport v. Greenlaw*, we held that a landowner was not precluded from raising certain issues before the Superior Court after he had received a letter from a CEO, which he did not appeal, determining the same issues against him. 602 A.2d 1156, 1161 (Me.1992). Analyzing his claim pursuant to both the doctrines of administrative res judicata and exhaustion of administrative remedies, we found that the CEO's letter did not preclude Greenlaw's argument that his use was grandfathered. *Id.* at 1160–61. Although we recognize that in *Greenlaw* we examined both doctrines, we conclude that an appeal to the Zoning Board and a civil proceeding in the District Court under M.R. Civ. P. 80K are distinct adjudications, rather than a continuous process for the enforcement of an ordinance. The decision of whether the zoning appeal precludes any issues or claims in the Rule 80K proceeding, therefore, is

properly analyzed using the doctrine of res judicata.

5. Like administrative proceedings, a default judgment entered in a District or Superior Court has the same preclusive effect on future litigation of claims and issues addressed in the default judgment. *Irving Pulp & Paper Ltd. v. Kelly*, 654 A.2d 416, 418 (Me.1995).

6. The other "essential elements of adjudication" for purposes of administrative res judicata include:

(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

(c) A formulation of issues of law and fact in terms of the application of rules with

*Greenlaw,* 602 A.2d at 1160–61; R ESTATE- MENT (S ECOND) OF J UDGMENTS § 83(2) cmt. d (1982). In other words, adequate notice of the opportunity to appeal to the Board and of the consequences of failing to appeal will trigger the protections of the Board's procedure, which include the other "essential elements of adjudication," whether or not the party actually appeals and receives those "essential elements."

▬ [¶ 22] In *Greenlaw,* we discussed what the notice from a CEO to a landowner regarding the landowner's right to an administrative appeal of the CEO's order must, at a minimum, contain. "[The] order . . . should refer to the provisions of the ordinance allegedly being violated, inform the violator of the right to dispute the order and how that right is exercised by appeal, and specify the consequences of the failure to appeal." *Greenlaw,* 602 A.2d at 1161. These requirements recognize that, because a CEO's letter of violation can become binding on subsequent actions involving the same issues, it must meet the highest standard of judicial scrutiny.

[¶ 23] In this case, the letter from the CEO satisfied these notice requirements. The CEO's letter notified Jenness that she was personally in violation of the ordinance because she was the owner of the property and she had knowledge of the restaurant being operated as a barroom. The letter stated, "Your continuance to allow these violations to exist, makes you a willing party to / in the violations and equally responsible." It further stated: "Having knowledge of a violation and allowing it to continue, you become a party to the violation." The letter informed Jenness of the nature of the alleged violation, it identified the property on which the violation had occurred, the existence of a nonpermitted use on that property, the section of the ordinance that had been violated, the authority for the CEO's actions, and it provided copies of the relevant provisions of the statute and ordinance. Because the CEO held Jenness responsible for Weeks's violation, he also included a copy of the notice of violation sent to Weeks. In addition to the right of appeal, the CEO informed Jenness that she could avoid being sanctioned for the violation by requiring Weeks to cease operating the barroom and altering the building to its former state.[7] Any reasonable person reading this letter would understand the nature of the violation being alleged.[8]

▬ [¶ 24] For purposes of res judicata, this particular notice withstands our high degree of scrutiny such that we find it

---

respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

(e) Such other procedural elements as may be necessary . . . .

R ESTATEMENT (S ECOND) OF J UDGMENTS § 83(2)(b)– (e) (1982) (cited in *Greenlaw,* 602 A.2d at 1160). These other "essential elements" are not discussed in this opinion because Jenness never appealed the CEO's decision to the Board. If she had appealed, she would have benefited from all of these elements in front of the Board.

**7.** Jenness chose to pursue none of these options.

**8.** Jenness cannot argue that she did not know of the necessity of appealing the CEO's letter or losing that right entirely. In fact, at trial, Jenness never argued that she did not receive notice of the violation or notice that she was required to appeal the CEO's decision. She only argued that the CEO's interpretation was incorrect and that, as a matter of law, a landlord cannot be held liable for a tenant's violations. The latter argument has been addressed in the discussion above. The former argument would have been properly made to the Board on an appeal. Weeks argued this very point to the Board and lost.

triggered the adjudicatory procedures of the Board of Appeals and all resulting protections. Similar to our conclusion in *Maines,* we find that Jenness has presented "no basis for relief from a final judgment. [She is] bound by [her] own deliberate choice to permit the decision of the [CEO] to become final." *Maines,* 493 A.2d at 330.

[¶ 25] Since Jenness was given notice of her right and opportunity to appeal the CEO's decision to the Board, she is precluded from rearguing the interpretation of the ordinance through concepts of administrative res judicata, and she cannot, in the District Court, collaterally attack the CEO's finding. The District Court did not err in its amended judgment by concluding that Jenness was bound by the CEO's construction of the ordinance because she never appealed the CEO's letter of violation to the Zoning Board of Appeals.[9] She was properly precluded from arguing a different construction of the ordinance, which could have been an issue for the Board of Appeals had she exercised her right of appeal.

[¶ 26] Regarding the Town's cross-appeal challenging the amount of attorney fees and fines awarded against Jenness, we find no error in the court's judgment. *See Town of Freeport v. Ocean Farms of Maine, Inc.,* 633 A.2d 396, 399–400 (Me. 1993); *Town of Ogunquit v. McGarva,* 570 A.2d 320, 321 (Me.1990). The matter shall be remanded to the District Court for consideration of the Town's request for attorney fees on appeal.

The entry is:

Judgment affirmed. Remanded to the District Court for consideration of the Town's request for attorney fees on appeal.

---

9. We note that the District Court found that it was the Board's decision that operated to preclude both Weeks and Jenness from challenging the CEO's interpretation of the ordinance. Although this was correct with regard to Weeks, it is not regarding Jenness. Jenness is precluded by the CEO's decision that was never appealed to the Board.