Larry R. VARILEK, Appellant,

v.

CITY OF HOUSTON and Matanuska–
Susitna Borough, Appellees.

No. S–10814.

Supreme Court of Alaska.

June 25, 2004.

Larry R. Varilek, pro se, Houston.

Richard A. Weinig, Pletcher & Weinig, Anchorage, for Appellee City of Houston.

Elizabeth D. Friedman, Assistant Borough Attorney, and Teresa Williams, Borough Attorney, Palmer, for Appellee Matanuska–Susitna Borough.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

Larry Varilek sued Matanuska–Susitna Borough and the City of Houston claiming that their enforcement of certain land use ordinances violated his constitutional rights. The superior court dismissed the claim because Varilek failed to exhaust his administrative remedies prior to bringing suit. Varilek asserts that he was unable to exhaust administrative remedies because he was unable to pay the borough's mandatory $200 administrative filing fee. Because Varilek's access to the legal system in this case is contingent on payment of the borough's administrative fees, an absolute requirement that such fees be paid, without a process for waiver upon a showing of indigency, would violate Varilek's right to procedural due process if Varilek is in fact indigent. Because it is unclear whether Varilek is indigent, we vacate the superior court's dismissal and remand for a determination of that issue.

### II. FACTS AND PROCEEDINGS

Larry Varilek operated a "metal recycling" business in an area denominated as a "holding district" within the municipal boundaries of the Matanuska–Susitna Borough and the City of Houston. Under Matanuska–Susitna Borough Code 17.41.530(B), development within the holding district "will be permitted

through a conditional use approval process." Varilek did not receive a conditional use permit for his business. Borough officials issued Varilek a notice of violation of zoning and land use codes regulating "junk and trash" and governing the disposal of scrap or junked cars. The borough then issued an Enforcement Order requiring Varilek to remedy the violations specified in the notice.

Varilek sued, claiming that the borough's regulations and their enforcement were unconstitutional on a variety of grounds. The defendants moved to dismiss, claiming that Varilek failed to exhaust his administrative remedies before he brought suit. Varilek responded that exhaustion was not required because he was challenging the laws as facially unconstitutional. The superior court rejected this argument and dismissed Varilek's claims without prejudice, strongly implying that he should attempt to exhaust his administrative remedies before refiling his case. On appeal, this court upheld that decision in all respects.[1]

Varilek then apparently attempted to appeal the borough's Enforcement Order to its Board of Adjustment and Appeals. However, such appeals require a $200 filing fee, to "defray the administrative cost of the appeal including, but not limited to, preparation of the transcript." Claiming indigence, Varilek requested a fee waiver, but his request was denied. The borough admits that it has no provision for waiving the required administrative fee. Varilek then filed a new lawsuit on essentially the same grounds as *Varilek I*. This time, however, he claimed that his attempt to file an administrative grievance, plus the borough's refusal to waive its filing fees, meant that he had either effectively exhausted his administrative remedies or was excused from doing so. At the same time, Varilek also appealed the borough's fee-related dismissal of his administrative grievance, claiming that the dismissal denied his right to procedural due process and equal protec-

tion. The superior court consolidated Varilek's new civil suit with his appeal of the administrative fee decision.

The borough and city moved to dismiss Varilek's lawsuit for failure to exhaust administrative remedies and on collateral estoppel grounds. The superior court found that the parties and issues were identical to those in Varilek's first case. It therefore held Varilek to be "collaterally estopped from relitigating his complaint." Alternatively, the court found that Varilek had again failed to exhaust his administrative remedies. The court thus dismissed the civil suit portion of the consolidated case. Varilek appeals this dismissal.

In its subsequent review of the borough's administrative fee, the superior court found that "Varilek's underlying property interest in obtaining review of [the borough's enforcement order] is outweighed by the Borough's interest in defraying the administrative cost of the appeal." The court also found that the borough "did not violate Mr. Varilek's equal protection rights because the filing fee requirement ... does not facially discriminate one class of individuals from another." The superior court thus affirmed the borough's refusal to waive its administrative filing fee. Varilek also appeals this decision.

We consider both of Varilek's claims here—the dismissal of his civil suit on collateral estoppel grounds and the determination that he failed to exhaust his administrative remedies.

## III. STANDARD OF REVIEW

[1–6] We review decisions granting or denying motions to dismiss *de novo*.[2] We also apply a *de novo* standard of review to questions of law, including constitutional law[3] and "adopt the rule of law that is most persuasive in light of precedent, reason, and

---

1. *Varilek v. City of Houston and Matanuska–Susitna Borough ("Varilek I")*, 104 P.3d 849, 2002 WL 539034 (Alaska, April 10, 2002).

2. *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003); *In re Life Ins. Co. of Alaska*, 76 P.3d 366, 368 (Alaska 2003).

3. *R & Y, Inc. v. Municipality of Anchorage*, 34 P.3d 289, 293 (Alaska 2001).

policy."[4] Whether *res judicata* or collateral estoppel applies is a question of law,[5] as is the determination whether a claim requires the exhaustion of administrative remedies.[6] On the other hand, whether available administrative remedies actually were exhausted is a question of fact that we review for abuse of discretion.[7] "We will reverse a ruling for abuse of discretion only when left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[8]

## IV. DISCUSSION

### A. Because the City of Houston Had No Role in this Controversy, It Is Dismissed from this Case with Prejudice.

■ In all proceedings before the superior court and this court, the city has concurred with the borough's legal arguments. However, the city also claims that it "has no role in this controversy," and notes that Varilek "does not allege action by the city" or "seek determination that any ordinance established by the City of Houston [is] unconstitutional." Accordingly, the city argues that it should be dismissed from this case. The borough has not opposed the city's argument.

■ In support of its dismissal, the city has asked this court to take judicial notice of two facts pursuant to Alaska Rule of Evidence 201. Evidence Rule 201(b) allows us to take judicial notice of facts "not subject to reasonable dispute." Facts are not subject to reasonable dispute if (1) "generally known within this state," or (2) "capable of accurate and ready determination by resort to sources

whose accuracy cannot reasonably be challenged." The city explains that Houston and Matanuska–Susitna are separate political entities, one a city and one a borough, and that the city is within the geographic limits of the borough. These facts are of general knowledge, and thus may be judicially noticed.

■ The city also asks us to take judicial notice of the fact that all of the laws challenged by Varilek in this case are borough, not city, ordinances. This can be easily ascertained by reviewing Varilek's pleadings: All of the statutes Varilek cites are in fact borough ordinances, despite the fact that many of them refer to or regulate the city.[9] Moreover, under Evidence Rule 202 this court may take judicial notice (with or without the request of a party) of "[d]uly enacted ordinances of municipalities or other governmental subdivisions." This includes Alaska's geographic and political boundaries.[10] Accordingly, we take judicial notice of the above facts.

We can properly dismiss all claims against a party pursuant to Alaska Rule of Civil Procedure 21, which allows a court to "drop" misjoined parties "on motion of any party or of its own initiative at any stage of the action." Since the city does not have any interest or role in this case, we dismiss all claims against the city.[11]

### B. Varilek's Legal Claims Are Not Precluded by Collateral Estoppel.

■ The doctrine of collateral estoppel or "issue preclusion" renders an issue of fact or law conclusive, and thus prevents its

---

4. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

5. *McElroy,* 74 P.3d at 906.

6. *Bruns v. Municipality of Anchorage, Anchorage Water & Wastewater Util.,* 32 P.3d 362, 366 (Alaska 2001).

7. *Id.*

8. *Betz v. Chena Hot Springs Group,* 742 P.2d 1346, 1348 (Alaska 1987).

9. *See* http://ordlink.com/codes/matanusk/index.htm.

10. *See McGee v. State,* 614 P.2d 800, 808 (Alaska 1980) (taking judicial notice of fact that Mile 206 of Richardson Highway is within boundaries of Fourth Judicial District).

11. The city moved for dismissal only from the action related to the borough's administrative decision, and the superior court granted its motion. While there is no indication in the record that the city moved for dismissal in response to Varilek's civil suit, we find that dismissal is appropriate given that the cases are consolidated and the city has no interest or stake in either action.

relitigation between the same parties.[12] For collateral estoppel to apply, four requirements must be met: (1) the party against whom preclusion is sought must have been a party in a previous action (2) in which the identical issue was decided (3) by a final judgment on the merits (4) that depended on resolution of the issue.[13]

■ Although we have not ruled on the issue, other courts generally do not consider dismissals without prejudice (such as the dismissal of Varilek's first lawsuit) to be preclusive final judgments on the merits.[14] Furthermore, in his previous lawsuit [15] Varilek argued that he was not required to exhaust administrative remedies, while in the present case Varilek has argued that the borough's filing fees prevented him from exhausting administrative remedies. Thus, Varilek's second case cannot be dismissed on the same grounds as his first. For this reason as well, collateral estoppel should not preclude Varilek's claims.

## C. Non–Waivable Administrative Filing Fees Violate Procedural Due Process if They Deny Indigent Litigants Access to the Courts.

■■ Varilek claims that the borough's refusal to waive his filing fees violated his constitutional right to procedural due process. The superior court rejected this claim, and upheld the borough's decision as constitutional. The superior court relied upon our decision in *Midgett v. Cook Inlet Pre–Trial Facility*,[16] which is based on the United States Supreme Court's decision in *Mathews v. Eldridge*.[17] Under *Midgett*, the determination of what constitutes due process (and thus whether it was denied) involves balancing: (1) "the private interest affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail." [18]

Addressing the first *Midgett* factor, the superior court rejected Varilek's due process claim in part because it found his interest in the case was "not compelling because it is a property interest." The court based this conclusion in part on *Boddie v. Connecticut*.[19] *Boddie* discussed an indigent's right to the judicial process unhampered by excessive fees. The Supreme Court only applied this right to cases where the judicial system holds a monopoly on the avenues of "adjustment of a fundamental human relationship," such as divorce.[20] Because the superior court interpreted our decision in *In re K.A.H.*[21] as "adopt[ing] the rationale" of *Boddie*, and because Varilek's interest in this case is only "economic," the superior court concluded that Varilek has no constitutional right of fee-less access to the legal system. We cannot agree.

Alaska is not precluded from offering greater rights and legal protections to its

---

12.  *McElroy*, 74 P.3d at 907.

13.  *Jackinsky v. Jackinsky*, 894 P.2d 650, 654 (Alaska 1995).

14.  See, e.g., *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396–97, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (holding that under Federal Rules of Civil Procedure, dismissal without prejudice does not "operate as an adjudication upon the merits," and that even when dismissed claim was so unfounded as to merit Rule 11 sanctions, litigant was not precluded from refiling it); *Pilot's Point Marina, Inc. v. Cazzani Power Boat Mfg., Inc.*, 745 A.2d 782, 784 (R.I.2000) (dismissal of claim without prejudice where claimant lacks capacity to sue is not final judgment on merits); *Eastern Idaho Agric. Credit Ass'n v. Neibaur*, 133 Idaho 402, 987 P.2d 314, 320 (1999) ("A dismissal without prejudice usually does not result in issue preclusion.").

15.  *Varilek v. City of Houston and Matanuska–Susitna Borough*, 104 P.3d 849, ——, 2002 WL 539034, *1 (Alaska, April 10, 2002).

16.  53 P.3d 1105 (Alaska 2002).

17.  424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

18.  *Midgett*, 53 P.3d at 1111 (adopting test articulated in *Mathews* ).

19.  401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

20.  *Id.* at 382–83, 91 S.Ct. 780.

21.  967 P.2d 91 (Alaska 1998).

citizens than those offered by the federal government.[22] Accordingly, we have not limited the right to access Alaskan courts without fees to indigents claiming "fundamental family interests." Rather, we have widened the right of access to the judicial system beyond the *Boddie* line of cases.

In *Bush v. Reid,* a parolee's suit for personal injuries from an automobile accident was dismissed based on a statute suspending the civil rights of a convict.[23] We noted that a personal injury lawsuit constituted "only" a property interest and, unlike divorces, automobile accidents can often be resolved privately, without resort to the state.[24] Nonetheless, we recognized that parties are not always successful in mediating their conflicts and that it is sometimes necessary to resort to the legal process.[25] Although only Bush's property interests were at stake, we held that "the very quality of his future existence may be dependant upon the outcome" of the case, and the denial of access to the court would constitute a "grievous loss" of his property interests.[26] Varilek's property interests in this case include his business and livelihood, the loss of which certainly might affect the quality of his future existence.

Similarly, in *Patrick v. Lynden Transport, Inc.,*[27] we explicitly held that access to the courts to litigate a property interest is an "important right."[28] The superior court's application of the first *Midgett* factor thus substantially underestimates the value of the private interest affected by the borough's rule. Furthermore, in this case it is the state, and not a private individual or entity, that allegedly threatens Varilek's livelihood. This case thus does not involve, as was at issue in *K.A.H.,* "the private structuring of individual relationships and repair of their breach,"[29] for which the judicial system should be the last resort.

In *K.A.H.,* we upheld a trial court's decision to deny reimbursement to an attorney for personal funds he advanced an indigent client prior to a favorable settlement.[30] The funds were meant to cover the client's living expenses, not litigation costs or fees, and as such were prohibited by Alaska Rule of Professional Conduct 1.8(e). The attorney argued that barring him from advancing living expenses to indigent litigants amounted to an unconstitutional interference with the indigents' right to access the court,[31] by "impos[ing] a financial hardship on plaintiffs that forces them to settle disputes rather than endure the potentially prolonged litigation process."[32] Rejecting this contention, we noted that *Boddie's* holding was limited to cases "involving state controls or intrusions on family relationships," which were not at issue in *K.A.H.*[33] However, we clearly indicated that in Alaska the right of access to the courts is greater than that guaranteed by *Boddie.* As we explained,

> [W]hereas *Bush, Boddie,* and *Patrick* involved direct impediments to court access, this case does not. The statute in *Bush* flatly prohibited parolees from filing suit. The statutes in *Boddie* and *Patrick* imposed court fees that denied indigent plaintiffs access to the courts. Such fees have been characterized as "insurmountable barrier[s] to filing suit." By contrast, nothing in Rule 1.8(e) expressly prohibits potential plaintiffs from filing suit or requires plaintiffs to pay for court access.[34]

---

22. *Bush v. Reid,* 516 P.2d 1215, 1219–20 (Alaska 1973).

23. *Id.*

24. *Id.* at 1217–18.

25. *Id.* at 1218.

26. *Id.* at 1218–19.

27. 765 P.2d 1375 (Alaska 1988).

28. *Id.* at 1379. Although this decision was grounded in an equal protection analysis, its reasoning is equally applicable to a due process inquiry.

29. *Bush v. Reid,* 516 P.2d at 1218 (quoting *Boddie v. Connecticut,* 401 U.S. at 375, 91 S.Ct. 780).

30. *K.A.H.,* 967 P.2d at 97–98.

31. *Id.* at 92.

32. *Id.* at 94.

33. *Id.* at 94–95.

34. *Id.* (internal citations omitted).

Accordingly, we disagree with the superior court's conclusion that *K.A.H.* models Alaska's right of court access on the same narrow standard used by the federal courts. An indigent whose business or property interests are threatened by an administrative action originally filed by a government agency need not be litigating a fundamental family matter in order to have a right of access to the courthouse. Since "prohibitive" filing fees should not be allowed to hamper an indigent litigant's access to the justice system in such situations,[35] it follows that such fees should also not be allowed to hamper his access to an administrative process if such access is a prerequisite to judicial relief.[36]

The *Midgett* test also requires analysis of the state's interests in its existing laws, the costs of changing them, and the viability of alternatives to the laws at issue. A reviewing court must address "the probable value, if any, of additional or substitute procedural safeguards ... and ... the fiscal and administrative burdens that additional or substitute procedural requirements would entail."[37] The superior court explicitly concluded that the borough's interest in charging a $200 administrative fee to all claimants was of utmost importance. While the borough has an interest in collecting fees to defray the cost of the administrative appeals process, a $200 fee is not critical to the borough's ability to conduct these appeals, particularly when other options might accommodate Varilek's and the borough's competing interests, such as reduced or graduated fees for indigent claimants or an installment payment plan.[38] The superior court did not address potential alternatives to the city's mandatory fee policy, nor did it weigh the benefit of such fees against the social costs inherent in a policy that effectively prohibits indigents from protecting their rights and interests against state actions. We cannot agree with the superior court's conclusion that in situations such as this, a $200 fee imposed on an indigent person is "so nominal that it minimally impedes [the] appellant's opportunity to seek appellate review, and [that] the probable value of additional procedural safeguards is minimal." Accordingly, we hold that the borough's refusal to offer any alternative to a $200 filing fee for administrative actions amounts to an unconstitutional denial of due process to indigent claimants. The only question then is whether Varilek is in fact indigent.

The superior court made no findings of fact regarding Varilek's ability to pay the borough's filing fee. While a court might rightfully be skeptical that a person who is both a business owner and a property owner is unable to pay a fee of $200, there is nonetheless some support in the record for Varilek's indigence. That support includes the fact that the superior court itself waived its filing fees for Varilek based upon his low income. But because the record is incomplete in this regard, we remand for factual findings related to whether Varilek can afford to pay the filing fees or whether this requirement prevents him from pursuing his claim through the courts.

### D. Varilek's Other Constitutional Claims Need Not Be Addressed.

In *Varilek I*, the superior court refused to address Varilek's constitutional claims, as did we. We explained that these claims contained "implicit allegations of non-constitutional administrative error." Addressing such claims "require[s] a factual context [that] would have been supplied by an administrative appeal." And an administrative reversal of such error might moot Varilek's entire case.[39] Since Varilek has yet to pur-

---

35. *Bush v. Reid*, 516 P.2d 1215, 1217–18 (Alaska 1973) (citing *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)).

36. *See, e.g., Bustamante v. Alaska Workers' Comp. Bd.*, 59 P.3d 270, 273 (Alaska 2002) (dismissal of indigent appellant's appeal of administrative decision for failure to pay transcript costs was abuse of discretion).

37. *Midgett v. Cook Inlet Pre–Trial Facility*, 53 P.3d 1105, 1111 (Alaska 2002).

38. Varilek complains only of a "[t]otal denial" of access to review "based upon the inability to pay a lump sum ..." and he proposes "a payment schedule where the fee is paid over a period of time, i.e., $25.00 per month."

39. *Varilek I*, 104 P.3d 849, 2002 WL 539034, at *1 (Alaska, April 10, 2002).

sue his administrative appeal it remains premature to address his other constitutional claims. It should be noted that since these claims were not properly before the court in this appeal, the borough was not obligated to brief these issues and it did not waive any defenses by declining to do so preemptively.

## V. CONCLUSION

Because the city played no role in enacting or enforcing the legislation challenged in this case, it is dismissed from this case with prejudice.

Because access to the borough's administrative appeals process requires a flat fee from all appellants regardless of their wealth, and because this process is a prerequisite to accessing the legal system, the borough's policy violates the procedural due process rights of indigent litigants. Because it is unclear in the present case whether Varilek is actually indigent, we REMAND to the superior court for a factual determination of this question and further proceedings in accordance with this opinion.