MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2022 ME 29
Docket:        And-21-119
Submitted
  On Briefs: November 18, 2021
Decided:       May 31, 2022

Panel:         MEAD, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.
Majority:      MEAD, JABAR, HUMPHREY, and HORTON, JJ.
Dissent:       CONNORS, J.

CITY OF LEWISTON

v.

WILLIAM VERRINDER

MEAD, J.

[¶1]  William Verrinder appeals from a summary judgment entered by the Superior Court (Androscoggin County, *Stanfill, J.*) in favor of the City of Lewiston on the City's M.R. Civ. P. 80K land use complaint alleging two violations of City ordinances. Verrinder contends the court erred in concluding that his challenge to the City Code Enforcement Officer's (CEO's) notice of violation was barred by the doctrine of administrative res judicata and further contends that the financial penalties the court imposed for the ongoing violations were unconstitutionally excessive.[1]  We disagree and affirm the

---

[1]  Verrinder also raises other challenges, including a challenge to the court's award of attorney fees to the City. We find those arguments unpersuasive and do not discuss them further.

2

judgment insofar as it found that no genuine issue of material fact remained for trial and that the City was entitled to judgment as a matter of law. *See* M.R. Civ. P. 56(c).

[¶2]  The City cross-appeals, contending that the court erred in making the civil penalties it imposed for the two separate violations concurrent with each other rather than cumulative.  We agree that the court did not have the discretion to allow Verrinder to pay less than the minimum statutory penalty for each violation.  Accordingly, we vacate that part of the judgment and remand for entry of a judgment imposing cumulative penalties.

## I.  BACKGROUND

[¶3]  The following facts are drawn from the summary judgment record, viewed in the light most favorable to Verrinder as the nonprevailing party.  *See Coward v. Gagne & Son Concrete Blocks, Inc.*, 2020 ME 112, ¶ 3, 238 A.3d 254. Verrinder owns a residential property in Lewiston.  On November 8, 2017, in response to a complaint, the CEO inspected Verrinder's property and promptly issued a notice for two ordinance violations: (1) "trash and construction demolition debris throughout the property," and (2) "[damaged] front stairs . . . as the first step is missing half the tread."  *See* Lewiston, Me., Code of Ordinances

§§ 18-51, 18-52 (Sept. 15, 2011, and May 1, 2014).[2]  Eight days later, Verrinder contacted the CEO regarding the notice.

[¶4]  On December 11, 2017, the City filed a land use complaint against Verrinder in the District Court.  *See* M.R. Civ. P. 80K.  Verrinder removed the case to the United States District Court for the District of Maine, which, finding no federal jurisdiction, remanded it back to the state court.  *City of Lewiston v. Verrinder*, No. 2:18-cv-00028-JAW (D. Me. Aug. 20, 2018).  In September 2018, Verrinder removed the case to the Superior Court for a jury trial.

[¶5]  The City and Verrinder each moved for summary judgment.  *See* M.R. Civ. P. 56.  By order dated January 14, 2021, the court granted the City's motion in part and denied Verrinder's motion, concluding that the doctrine of administrative res judicata entitled the City to a judgment as a matter of law because Verrinder had not appealed to the Lewiston Board of Appeals from the CEO's notice of violation when it was issued in November 2017.  The court set the question of the appropriate penalty, along with costs and fees to be imposed, for an evidentiary hearing.

---

[2]  The Ordinance adopts the 2009 edition of the International Property Maintenance Code, including sections 302.1 and 304.10, which are relevant here.  *See* Lewiston, Me., Code of Ordinances §§ 18-51, 18-52 (Sept. 15, 2011, and May 1, 2014).

4

[¶6] At that hearing, the City requested the minimum statutory penalty of $100 per day for each of the two violations, plus attorney fees and costs. *See* 30-A M.R.S. § 4452(3)(B), (5)(G) (2022).[3] The court found that, although it "consider[ed] the total civil penalty sought to be disproportionate to the offenses," it was "without discretion to impose less than $24,300.00 for the 243 days of continuing violation involving the accumulation of rubbish or garbage, and $14,700.00 for the 147 days of continuing violation involving the damaged front stairs." It then ordered that the two penalties run concurrently with each other, with the result that "the total penalty that must be paid is $24,300.00." The court also awarded the City attorney fees of $28,257.

[¶7] Verrinder appealed, asserting that the court erred in applying the administrative res judicata doctrine and in its attorney fee award. The City cross-appealed, asserting that the court had no authority to order that the civil penalties run concurrently.

---

[3] Although not at issue in this appeal, the maximum per-day penalty has since increased from $2,500 to $5,000. P.L. 2019, ch. 40, § 2 (effective Sept. 19, 2019) (codified at 30-A M.R.S. § 4452(3)(B) (2022)).

## II. DISCUSSION

### A. Administrative Res Judicata

[¶8] We have recognized the doctrine of administrative res judicata, which provides that "the decisions of state and municipal administrative agencies are to be accorded the same finality that attaches to judicial judgments." *Hebron Acad., Inc. v. Town of Hebron*, 2013 ME 15, ¶ 28, 60 A.3d 774 (alteration and quotation marks omitted); *see* 30-A M.R.S. § 2691(4) (2022) ("[A] notice of violation or an enforcement order by a code enforcement officer under a land use ordinance . . . that is not timely appealed is subject to the same preclusive effect as otherwise provided by law."). Pursuant to the doctrine, "[i]f a party does not challenge an administrative order through an available appeal that contains the essential elements of adjudication, the failure to do so may have preclusive effect upon any subsequent litigation on identical issues and claims dealt with in the administrative order." *Town of Boothbay v. Jenness*, 2003 ME 50, ¶ 21, 822 A.2d 1169 (quotation marks omitted); *see Town of Freeport v. Greenlaw*, 602 A.2d 1156, 1160 (Me. 1992). Specifically,

> in order to have a preclusive effect, the notice [of violation] should state the nature of the action and inform the recipient of the opportunity to object and of the consequences of a failure to heed the notice.

6

> . . . [T]o be effective in triggering the running of an appeal period, an order to refrain from taking or continuing certain action because it violates a zoning ordinance should refer to the provisions of the ordinance allegedly being violated, inform the violator of the right to dispute the order and how that right is exercised by appeal, and specify the consequences of the failure to appeal.

*Greenlaw*, 602 A.2d at 1160-61 (citation and footnotes omitted).

[¶9] We review de novo the court's conclusion that Verrinder's challenge to the CEO's notice of violation was foreclosed by administrative res judicata, *see Jenness*, 2003 ME 50, ¶ 19, 822 A.2d 1169, and conclude that on this record the court's determination was correct. The notice set out the provisions of the ordinances being violated verbatim; detailed the corrective action required and the date by which it must be taken; informed Verrinder that he could appeal to the Lewiston Board of Appeals and request a hearing by filing a written petition within ten days of receiving the notice; and advised him that if he did not comply with the order or appeal it, he would be subject to stated penalties and "barred from any opportunity to contest or challenge the content or terms of this Notice and Order in any further legal proceedings."

[¶10] Verrinder acknowledged that he did not take an administrative appeal, asserting in the summary judgment record that he could not pay the $150 appeal fee and that the fee was unconstitutional. *See* Lewiston, Me., Code

of Ordinances § 2-166 (Dec. 31, 2009). The court was not persuaded by that argument, concluding that because Verrinder made no attempt to appeal within the required time, it was left "without any facts as to whether the $150.00 fee affected [his] ability to appeal the Notice, [or] whether it was waivable or would have been waived."

[¶11] We agree with the court's analysis. The dissent, citing a treatise for support,[4] states categorically that "as a matter of law" the appeal fee "could not have been" waived by the Board of Appeals, and then uses that assertion as the foundation for implicating both the Maine and United States Constitutions. Dissenting Opinion ¶¶ 29, 33, 35, 38. As the trial court found, however, absent any attempt by Verrinder to pursue an appeal we do not know what the Board's response would have been, assuming Verrinder had been able to establish that he could not afford to pay the fee.[5] Perhaps the Board would have allowed the

---

[4] The dissent also cites our decision in *Lane Construction Corporation v. Town of Washington*, where we concluded that the Town of Washington Planning Board lacked authority under the Town's ordinance to *impose* additional fees on an applicant after it had submitted an application. 2008 ME 45, ¶ 27, 942 A.2d 1202; Dissenting Opinion ¶ 29. We did not address the question presented here, namely whether it was incumbent on Verrinder to appeal the CEO's notice of violation in order to give the Board an opportunity to *reduce* the fee he was required to pay.

[5] As a matter of summary judgment practice, Verrinder's bare assertion by affidavit that he was of "limited financial means" and was therefore "unable to pay the [City's] $150.00 fee to appeal the [notice of violation]"—unsupported by citation to any record evidence showing his income, assets, expenses, receipt of public assistance, or other indicia of indigence that would establish the parameters of his "limited financial means"—was insufficient to create a question of fact on that issue. *See* M.R. Civ. P. 56(e) ("[A]n adverse party . . . must respond by affidavits . . . setting forth *specific facts* showing that there is a genuine issue . . . ." (emphasis added)); *Flaherty v. Muther*, 2011 ME 32,

8

appeal to proceed or put the fee issue before the City Council for decision, perhaps not—the open question illustrates the necessity for Verrinder to have made the attempt in the first instance. Had he done so, the reasonableness of the fee and the validity of the denial of the waiver—if that is what happened—would have been adjudicated. If Verrinder prevailed on either issue, the court presumably would have remanded with an instruction to the Board to consider his appeal. The validity of the fee was never litigated in the trial court and cannot be litigated here.[6] *See Sea & Sage Audubon Soc'y, Inc. v. Plan. Comm'n of Anaheim*, 668 P.2d 664, 669-70 (Cal. 1983).

[¶12] Furthermore, the dissent, asserting that the notice of violation did not have preclusive effect because the appeal fee prevented Verrinder from having a fair opportunity to litigate the notice, relies on a readily distinguishable decision of the Alaska Supreme Court for primary support. Dissenting Opinion ¶¶ 33, 41-46. In *Varilek v. City of Houston*, the court held that the municipality's "refusal to offer any alternative to a $200 filing fee for [an administrative appeal] amounts to an unconstitutional denial of due

---

¶ 51, 17 A.3d 640 ("[A] plaintiff must . . . establish in the summary judgment record evidence sufficient to create a question of fact, and summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." (citations and quotation marks omitted)).

[6] We also disagree with Verrinder's assertion that "[t]he right to dispute the order is necessarily free, by definition."

process to indigent claimants." 104 P.3d 849, 855 (Alaska 2004). In that case, however, the party contesting a notice of violation actually did appeal to the municipal board of appeals and, claiming indigence, requested a fee waiver. *Id.* at 851. The municipality denied his request, "admit[ting] that it ha[d] no provision for waiving the required administrative fee." *Id.*

[¶13] Here, Verrinder made no such request for a fee waiver, the City has not refused to consider any alternative to the payment of the fee, and Verrinder has not offered any evidence beyond his bare assertion that he is impoverished and unable to pay the fee—an unsupported assertion that is insufficient to require a remand to the Superior Court to make findings on his claimed indigency and the reasonableness of the City's fee requirement.

[¶14] In summary, because Verrinder was fully informed of the terms of the ordinances he was charged with violating and did not pursue an administrative appeal after being advised of the procedure for doing so and the consequences of failing to do so, the CEO's notice of violation had preclusive effect in the Superior Court. *See Jenness*, 2003 ME 50, ¶ 21, 822 A.2d 1169.

**B.  Eighth Amendment**

[¶15]  The court imposed civil penalties for the two violations—accumulated trash and a broken stair—totaling $39,000. Verrinder asserts, as

he did in the trial court, that those penalties are unconstitutionally excessive.[7]

As an initial matter, Verrinder incorrectly contends the trial court did not address his Eighth Amendment argument. The court concluded following the penalty hearing that it "consider[ed] the total civil penalty sought to be disproportionate to the offenses . . . [n]onetheless, this is the minimum penalty required by statute," thus implicitly finding that the penalty was not *unconstitutionally* excessive. We review that conclusion de novo. *See Portland Reg'l Chamber of Com. v. City of Portland*, 2021 ME 34, ¶ 7, 253 A.3d 586. Verrinder, as "[a] person challenging the constitutionality of a statute[,] bears a heavy burden of proving unconstitutionality, since all acts of the Legislature are presumed constitutional." *Somerset Tel. Co. v. State Tax Assessor*, 2021 ME 26, ¶ 30, 259 A.3d 97 (quotation marks omitted).

[¶16]   The Eighth Amendment to the United States Constitution and article I, section 9 of the Maine Constitution bar the imposition of "excessive fines." In *United States v. Bajakajian*, the United States Supreme Court held that

---

[7] In addition, alleging that his trash was actually a form of political speech, Verrinder asserts that "any fine at all for engaging in political speech is excessive and unconstitutional." The court correctly concluded that Verrinder "failed to raise a genuine issue of material fact on his First Amendment claim." He supported his statement of fact asserting that he "used household items, sheetrock, and tires to express political speech in the form of political art" with only his own affidavit consisting of a conclusory statement to that effect. The affidavit did not include a description of the alleged political speech or attach any photographs of it. *See Flaherty*, 2011 ME 32, ¶ 51, 17 A.3d 640. The photographs attached to the CEO's affidavit in the summary judgment record appear to show trash randomly strewn in Verrinder's yard.

"[t]he Excessive Fines Clause . . . limits the government's power to extract payments . . . as punishment for some offense."  524 U.S. 321, 328 (1998) (quotation marks omitted).  "The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. . . . [A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."  *Id.* at 334.

[¶17]  The *Bajakajian* Court also "emphasized" that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature."  *Id.* at 336.  Here, the Maine Legislature determined that the minimum per-day penalty for "a specific [local land use ordinance] violation is $100."  30-A M.R.S. § 4452(3)(B); *see id.* § 4452(5)(G).  We conclude that the $100 per-day civil penalty is not violative of the Excessive Fines Clause.

[¶18]  The penalty imposed on Verrinder is properly viewed as 243 separate minimum daily civil penalties of $100 for the trash violation and 147 separate minimum civil penalties of $100 for the damaged stair violation—not as a single $24,300 penalty for excessive trash and a single $14,700 penalty for defective stairs.  The substantial total of the accumulated daily penalties is solely the result of Verrinder's voluntary inaction.  Verrinder could have ended the accumulation of daily penalties at any time by, as the notice of violation

12

advised, complying with the ordinances by simply discarding the accumulated trash and making a relatively simple repair to a stair tread.

[¶19] Unlike criminal fines, the civil penalties provided by the statute are corrective, not punitive, in nature. *See Dep't of Env't Prot. v. Emerson*, 616 A.2d 1268, 1270 (Me. 1992) ("[T]he daily [civil] penalty has coercion as the primary purpose."). The purpose of such penalties is to compel compliance with the law prospectively, not to punish past behavior. *See State v. Anton*, 463 A.2d 703, 706 (Me. 1983) ("In theory, a criminal sanction serves to punish an individual for violating a legal norm, while civil sanctions serve to coerce, regulate or compensate." (quotation marks omitted)). A person subject to civil penalties for violations of land use ordinances has the prerogative to immediately prevent the accumulation of the penalties by simply complying with the ordinances. In Verrinder's case, the court's imposition of the minimum penalty prescribed by the Legislature for hundreds of ongoing violations extending over some eight months is not "grossly disproportional" to the gravity of his offense. *Bajakajian*, 524 U.S. at 337.

C.     **Cumulative Civil Penalties**

[¶20] Turning to the City's cross-appeal, the trial court considered what it determined to be an unresolved question of law: "[W]hether the two [land

use violation] penalties may run concurrently to each other . . . where the violations existed at the same time and were the subject of a unitary Notice of Violation and Land Use Enforcement action." Analogizing from the criminal law, the court concluded that they could and imposed concurrent penalties, reducing the amount Verrinder was required to pay by $14,700—the amount of the broken stair penalty. We review for an error of law whether, as the City contends, the court exceeded its authority by imposing concurrent penalties. *See Emerson*, 616 A.2d at 1271.

[¶21] The court was, as it recognized, required by statute to impose a minimum penalty of $100 per day for each violation. 30-A M.R.S. § 4452(3)(B). The court also correctly recognized that our prior decisions "[have] made it clear that [the trial] court is . . . without discretion to suspend any portion of the minimum penalty imposed." *See Town of Orono v. LaPointe*, 1997 ME 185, ¶ 12, 698 A.2d 1059 ("The only discretion permitted to the court is in assessing the penalty for each separate offense between the minimum of $100 and the maximum . . . . The District Court correctly assessed the minimum penalty . . . but erred by suspending any part of it."); *Emerson*, 616 A.2d at 1272 ("The Superior Court erred as a matter of law in imposing a lesser penalty.").

[¶22] We agree with the City that there is no practical difference between suspending the broken stair penalty—which would clearly be error under *LaPointe*—and making it concurrent with the larger trash violation penalty. In either case Verrinder would not be required to pay the minimum penalty prescribed by the Legislature for the broken stair violation. *See* 30-A M.R.S. § 4452(3)(B). The court's analogy to criminal law is inapposite because, as we have discussed, civil penalties are coercive, *see Emerson*, 616 A.2d at 1270, and are imposed to incentivize compliance with ordinances rather than to punish, *see Anton*, 463 A.2d at 706. As the City notes, a concurrent penalty is a *disincentive* to compliance with an ordinance because, using this case as an example, it would remove any reason for Verrinder to fix his broken stairs.

[¶23] We therefore hold that the court erred in making the minimum civil penalties it imposed pursuant to 30-A M.R.S. § 4452(3)(B) concurrent with one another. Accordingly, we vacate that portion of the judgment and remand for entry of a judgment requiring Verrinder to pay a total civil penalty of $39,000, plus the fees and costs awarded by the court.

The entry is:

> That portion of the judgment making the civil penalties imposed concurrent with each other is vacated. Remanded for entry of a judgment

requiring payment of $39,000 in civil penalties.
In all other respects, judgment affirmed.

_____

CONNORS, J., dissenting.

[¶24]  I would vacate the judgment and remand for a determination, before the application of res judicata, whether Verrinder was in fact unable to pay the appeal fee due to financial hardship.  Assuming that Verrinder can show that he was unable to pay the appeal fee, the Court's conclusion that Verrinder cannot contest the application of res judicata because he did not attempt to obtain a waiver of the fee before the Board, despite the lack of any legal avenue to seek such a waiver, is contrary to the requirement that, for res judicata to apply, the party against whom the doctrine is asserted must have had fair notice and a full and fair opportunity to participate in the preceding litigation.

## I.  BACKGROUND

[¶25]  The salient facts are as follows:

- A code enforcement officer (CEO) for the City cited Verrinder for having trash in his yard and a partially damaged step.  The notice of violation (NOV) issued by the CEO was not the product of an adjudication with the elements essential to meet our due process requirements.[8]

---

[8]  The "essential elements of adjudication include 1) adequate notice, 2) the right to present evidence and legal argument and to rebut opposing evidence and argument, 3) a formulation of issues of law or fact to apply rules to specified parties concerning a specified transaction, 4) the rendition of a final decision, and 5) any 'other procedural elements as may be necessary to constitute the

16

- The NOV informed Verrinder that, within ten days, he must pay a $150 appeal fee to obtain an adjudication by the Board of Appeals. The city ordinance states that "[t]he fee for filing an appeal shall be set by the city council on the recommendation of the director of code enforcement." Lewiston, Me., Code of Ordinances § 2-166 (Dec. 31, 2009). Nothing in either the NOV or the ordinance indicated that the appeal fee could be waived, and the City does not argue that it could have been waived.

- After the time to appeal to the Board had lapsed, the City filed a land use enforcement action against Verrinder pursuant to M.R. Civ. P. 80K. About a month later, it also filed a notice of lis pendens on his home, presumably in anticipation of seizing his property if the City were to prevail in the action and Verrinder were then unable or unwilling to pay the amount of the judgment.[9]

- The City moved for summary judgment, asserting that, because Verrinder did not appeal the NOV to the Board, the doctrine of res judicata prevented Verrinder from defending himself on the merits in the enforcement action.

- Verrinder responded by asserting, supported by a sworn affidavit, that he had lacked the means to pay the appeal fee. He argued that res judicata should not apply because his inability to pay the appeal fee deprived him of a fair opportunity to litigate the NOV before the Board.

- The trial court rejected Verrinder's argument and granted the City's motion on the basis that Verrinder did not try to appeal to the Board, despite the lack of any fee waiver avenue.

---

proceeding a sufficient means of conclusively determining the matter in question.'" *Town of N. Berwick v. Jones*, 534 A.2d 667, 670 (Me. 1987) (quoting Restatement (Second) of Judgments § 83(2)(e) (Am. L. Inst. 1982)).

[9] A lis pendens is "[a] notice, recorded in the chain of title to real property . . . to warn all persons that certain property is the subject matter of litigation." *Lis Pendens*, Black's Law Dictionary (11th ed. 2019).

- Constrained by the civil penalties set forth in 30-A M.R.S. § 4452(3)(B) (2022) for violations of land use ordinances, the trial court issued a judgment of $52,557, which included costs and fees.[10]  The trial court stated: "To be clear, the court considers the total civil penalty sought to be disproportionate to the offenses, particularly since the rubbish strewn about was not visible for much of the time when there was snow on the ground."

- On appeal, this Court has increased that judgment by another $14,700.  Court's Opinion ¶¶ 20-23.

[¶26]  Given these circumstances, as explained below, res judicata should not apply if Verrinder can show that the appeal fee imposed a financial hardship on him.

## II.  DISCUSSION

### A.  Verrinder's ability to defend against the application of res judicata should not be foreclosed because he did not try to appeal to the Board given the lack of any legal avenue to do so.[11]

[¶27]  The trial court rejected Verrinder's argument against the application of res judicata because it concluded, as a matter of law, that although there was no notice in the NOV of an opportunity to waive the fee, Verrinder should have tried to appeal to the Board anyway.  In affirming, this

---

[10]  A court has no discretion to lower the $100 per day minimum penalty for a land use violation. *See* 30-A M.R.S. § 4452(3)(B) (2022); *Town of Orono v. LaPointe*, 1997 ME 185, ¶¶ 9-12, 698 A.2d 1059.

[11]  "The doctrine of res judicata prevents the relitigation of matters already decided . . . ." *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 7, 940 A.2d 1097.  Although the doctrine has different branches, each branch precludes, or estops, a party from litigating on the merits in the second proceeding. *Id.* ¶¶ 7-9.

18

Court agrees, citing the trial court's statement that Verrinder's lack of an attempt to appeal the NOV left the trial court with no factual basis to determine whether the $150 fee affected Verrinder's ability to appeal or whether the fee could have been waived. Court's Opinion ¶¶ 10-11. There are several flaws with this reasoning.

[¶28] First, as a practical matter, nothing prevented the trial court from determining whether Verrinder was financially incapable of paying the fee. The trial court was left with no factual basis to determine the answer to this question only because it granted summary judgment on this issue without addressing the merits of Verrinder's argument.[12]

[¶29] Second, as a matter of law, the Board could not have waived the appeal fee. A municipal board of appeals is a creature of statute and ordinance. *See Pike Indus., Inc. v. City of Westbrook*, 2012 ME 78, ¶ 17, 45 A.3d 707.

---

[12] The Court states that Verrinder's "bare assertion by affidavit" that he had limited financial means and was unable to pay the $150 appeal fee was insufficient because it was "unsupported by citation to any record evidence showing his income, assets, expenses, receipt of public assistance, or other indicia of indigence." Court's Opinion ¶ 11 n.5. Although a person seeking a waiver of *court fees* must include such information in his affidavit, *see* M.R. Civ. P. 91(a)(2), there was no such requirement here. Notably, the record demonstrates that Verrinder was granted a waiver of court fees when he removed this matter to the federal court. In any event, the City did not controvert Verrinder's assertion of indigence nor has it claimed that Verrinder's affidavit was made in bad faith. *See* M.R. Civ. P. 56(g). Verrinder's unchallenged assertion was sufficient to generate a genuine dispute of material fact warranting a hearing. *See Harrington v. Harrington*, 269 A.2d 310, 313-16 (Me. 1970) (holding that, because a tenant averred in an affidavit that her poverty prevented her from posting the security required to defend herself in an eviction proceeding and her averment was unchallenged, the trial court should have taken the tenant's indigence as having been established).

Although *courts* have an inherent ability to waive fees for indigent parties, *see Melder v. Carreiro*, 541 A.2d 1293, 1294 (Me. 1988), *local boards* do not, *see* Sandra M. Stevenson, *Antieau on Local Government Law* § 26.03 (2d ed. 2021) ("Local government administrative bodies have no inherent authority. Powers are limited to those expressly granted by statute or necessarily implied, or incident to, express powers. It has been held that such grants of power will be strictly construed, and that actions taken by a local administrative body in excess of the power granted will be void."); *Lane Constr. Corp. v. Town of Wash.*, 2008 ME 45, ¶¶ 25-27, 942 A.2d 1202 (vacating a board's decision to impose fees in excess of the established permit fee because the ordinance did not grant authority to the board to impose fees on an ad hoc basis). The ordinance here expressly reserved to the City Council the authority to set the filing fee for appeals to the Board. Nothing in the ordinance granted the Board the authority to waive the fee. Had the Board nevertheless allowed an appeal to proceed without payment of the fee as the Court suggests, Court's Opinion ¶ 11, effectively setting the fee at zero, that action would have been an unlawful usurpation of the City Council's power. *See Matthews Municipal Ordinances* § 8.28 (3d ed. 2022) ("If a board of review is to be established, the ordinances to be drafted must make it clear that the board will not make policy which is to

20

be made by elected officials responsible directly to the voters. The board will merely use existing ordinances to decide the rights of people involved in the appeal.").[13]

[¶30] Third, whether or not our exhaustion principles require a party to make a futile attempt at an intermediate administrative appeal before bringing that appeal to court, such an attempt is not a condition precedent to asserting a defense against the application of res judicata. Nothing in our law of preclusion compels an indigent party to attempt to appeal the decision in the first proceeding when there is no legal basis to waive a fee requirement to pursue the appeal.

[¶31] Finally, even if the Board had the authority to grant an ad hoc waiver—an assumption contrary to both the factual record and the law—that would be immaterial because nothing in the NOV or the ordinance informed Verrinder that he could seek a waiver. For administrative res judicata to apply,

---

[13] The Court further suggests that the Board might have "put the fee issue before the City Council for decision." Court's Opinion ¶ 11. But a legislated exemption for one individual would be unconstitutional. *See* Me. Const. art. IV, pt. 3, § 13; *Brann v. State*, 424 A.2d 699, 704 (Me. 1981) (stating that "special legislation attempting to exempt one individual from generally applicable requirements of the law" violates the Constitution). If the Court is suggesting that Verrinder should have proposed and obtained, within his ten-day window, an amendment to the ordinance to create a generally applicable fee waiver provision, the doctrine of exhaustion of *administrative* remedies, assuming it could apply, does not require a litigant to seek a *legislative* change. *See Gross v. Sec'y of State*, 562 A.2d 667, 671 (Me. 1989) (providing that the doctrine of exhaustion of administrative remedies did not apply where existing law could not provide the litigant with relief).

"the administrative proceeding must entail the essential elements of adjudication," including "adequate notice" of the "opportunity to object." *Town of Freeport v. Greenlaw*, 602 A.2d 1156, 1160 (Me. 1992) (quotation marks omitted). For a notice to be deemed adequate, it must state how the right to object is exercised. *Town of Boothbay v. Jenness*, 2003 ME 50, ¶¶ 21-22, 822 A.2d 1169. If nothing in the law—here, the ordinance—indicates how an indigent party who seeks to appeal must proceed, then the NOV that informs the recipient of the right to appeal and the requirements to do so— to avoid the application of res judicata—must. If the NOV states that the appeal application must be accompanied by the payment of a fee, it must also indicate how to appeal when the applicant cannot afford to pay the fee. *See In re Forfeiture of 2000 GMC Denali & Contents*, 892 N.W.2d 388, 398-400 (Mich. Ct. App. 2016) (concluding that a civil defendant was unfairly denied the opportunity for a hearing because the statutory scheme did not set forth a procedure to obtain a waiver of a bond requirement and rejecting an argument, that, anecdotally, waivers had been previously granted by stating that "[i]n order for claimant to take advantage of such a procedure, if it existed at all, claimant would have had to depend on the vagaries of 'word of mouth referral,' which is insufficient to satisfy due process because this is not a public source to which a claimant can

turn to learn about the remedial procedures available to him" (alterations, citation, and quotation marks omitted)).

**B.     The relevant question on appeal is whether the fee requirement deprived Verrinder of a fair opportunity to appeal the NOV to the Board.**

[¶32]  It is blackletter law that for a decision to have preclusive effect, the party against whom preclusion is sought must have had a fair opportunity to litigate in the earlier proceeding.   *See Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131 (stating that issue preclusion "asks whether a party had a fair opportunity and incentive in an earlier proceeding to present the same issue or issues it wishes to litigate again in a subsequent proceeding"); *20 Thames St. LLC v. Ocean State Job Lot of Me. 2017 LLC*, 2021 ME 33, ¶ 15, 252 A.3d 516 (providing that claim preclusion applies when a litigant "had a reasonable opportunity to argue in the prior action" (quotation marks omitted)); *Jenness*, 2003 ME 50, ¶ 21 & n.6, 822 A.2d 1169 (including a "fair opportunity to rebut evidence and argument by opposing parties" among the "essential elements" for preclusion by administrative res judicata (quotation marks omitted)).

[¶33]  Because the trial court and this Court concluded that Verrinder had to try to obtain a fee waiver, despite the lack of any legal avenue for doing so, in

order to defend against the subsequent application of res judicata, Court's Opinion ¶¶ 10-11, neither the trial court nor this Court reached the question whether the City's lack of a fee waiver mechanism for indigent parties rendered the appeal opportunity unfair for the purposes of applying res judicata in the subsequent Rule 80K proceeding. If the answer to this question is "no"—if no waiver avenue is required for the litigation opportunity to be deemed fair for indigent parties for res judicata purposes—then the lack of a waiver avenue would be immaterial, and the judgment should be affirmed on that ground. Because I do not agree that Verrinder was required to try to obtain a fee waiver as a condition precedent to being allowed to argue that the opportunity to appeal the NOV was unfair for res judicata purposes due to his indigency, I must address the merits of this defense, i.e., whether such a waiver avenue is required for res judicata to apply.

[¶34] While fairness in the preclusion context is not necessarily the same as fairness in the constitutional context, at a minimum, if the imposition of a fee upon an indigent defendant with no waiver opportunity violates our Constitution, then it follows that the proceeding was unfair for preclusion purposes. Given the multiple serious constitutional concerns outlined below, I believe that the application of res judicata would be contrary to our common

24

law if Verrinder showed that he was in fact financially incapable of paying the appeal fee.

[¶35]  In examining constitutional issues, we look first to provisions in the Maine Constitution, although we may look to the interpretation of federal counterparts as well as counterparts in the constitutions of other states if we find those interpretations persuasive.  *See State v. Reeves*, 2022 ME 10, ¶ 41, 268 A.3d 281; *State v. Cadman*, 476 A.2d 1148, 1150 (Me. 1984).  The imposition of a substantial fee with no opportunity for a waiver for indigent parties implicates multiple provisions of the Maine Constitution, including the open courts provision;[14] the Due Process Clause;[15] and, as applied here, the prohibition against excessive fines.[16]  Because the question here is ultimately of the Maine common law of preclusion, it makes particular sense to focus on our own precedents.

---

[14]  "**Right of redress for injuries.**  Every person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay."  Me. Const. art. I, § 19.

[15]  "**Discrimination against persons prohibited.**  No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof."  Me. Const. art. I, § 6-A.

[16]  "**Sanguinary laws, excessive bail, cruel or unusual punishments prohibited.**  Sanguinary laws shall not be passed; all penalties and punishments shall be proportioned to the offense; excessive bail shall not be required, nor excessive fines imposed, nor cruel nor unusual punishments inflicted."  Me. Const. art. I, § 9.

### 1.    Maine Precedents

[¶36]  Maine common law is robust with decisions concluding that bonds and other monetary burdens imposed to appeal or to obtain access to the courts are unconstitutional when imposed on indigent parties.  In *Harrington v. Harrington*, 269 A.2d 310, 313-16 (Me. 1970), for example, we held that the imposition of security costs on a tenant in the forcible entry and detainer process that allowed for judgment of possession in favor of the landlord and foreclosed appellate review when not paid violated our Constitution in the absence of an opportunity to waive the costs for indigent parties, noting that such costs barred the impecunious defendant from equal access to the courts and equal protection under the law.  We ruled:

> By virtue of affirmative restrictive limitations on the indigent's right to defend and appeal in eviction cases, the State directly participates in the resultant unequal treatment which automatically favors the affluent with summary judgment at the expense of the poverty-stricken class whose defense is arbitrarily denied without any opportunity of a hearing.  Such State action spells unequal justice in an area of great magnitude to the impecunious but of minor importance in terms of State purposes.

*Id.* at 315-16.  In so ruling, we stated that "'[a]n act that purports to authorize procedure depriving an owner of his property without opportunity for hearing and without notice violates both the federal and state Constitutions.'"  *Id.* at 315 (quoting *Randall v. Patch*, 118 Me. 303, 305, 108 A. 97 (1919)).  Thus, we

equated a fee imposition without a waiver avenue for indigent parties with a lack of a fair opportunity for a hearing—the touchstone under our preclusion analysis.

[¶37]  In *Bennett v. Davis*, 90 Me. 102, 104-05, 37 A. 864 (1897), we struck down as unconstitutional a statute that required a taxpayer to deposit with the court any assessed tax with interest and costs as a condition on the taxpayer's right to judicially contest the validity of the assessment and sale of his land.  We invoked, among other provisions, the Due Process Clause and open courts provision of our Constitution.  *Id.*; *see also Woods v. Perkins*, 119 Me. 257, 263, 110 A. 633 (1920) ("It may well be that an alleged offender may find himself unable to procure the necessary sureties and to give the requisite bond, in which case the provision affords him no assistance whatever.  No unlawful condition or restraint can be imposed upon the constitutional privilege of every person to have his legal rights adjudicated in accordance with the law of the land."); *Dunn v. Snell*, 74 Me. 22, 27-28 (1882) (previewing the ruling in *Bennett*); *State v. Gurney*, 37 Me. 156, 157, 163-64 (1853) (holding that a statute requiring the posting of a bond as a condition to appeal was unconstitutional); *Inhabitants of Saco v. Wentworth*, 37 Me. 165, 170-76 (1853) (same).

### 2. Federal Precedents

[¶38]  Under the U.S. Constitution, a fee without a waiver opportunity for indigent parties violates due process when the subject matter involves a "fundamental right." *See Melder*, 541 A.2d at 1294.  The right to defend oneself is fundamental.  *See Boddie v. Connecticut*, 401 U.S. 371, 377 (1971) ("Early in our jurisprudence, this Court voiced the doctrine that wherever one is assailed in his person or his property, there he may defend." (alteration and quotation marks omitted)); *see also Little v. Streater*, 452 U.S. 1, 3-4, 16-17 (1981) (concluding that a Connecticut statute requiring costs of blood testing in paternity actions be borne by the party requesting them violated due process when applied to indigent defendants).

[¶39]  Here, Verrinder is not only seeking to defend against civil penalties imposed based on the use of his property, but he may very well lose his home given the size of the penalty.  We have previously referenced the "fundamental right" to property.  *See Porter v. Hoffman*, 592 A.2d 482, 486-87 (Me. 1991).

[¶40]  Also notable, nothing in the record indicates that the $150 fee is related to any actual cost incurred by the City to hear an appeal before a volunteer board of appeals or to advance any legitimate state goal.  *See Boddie*, 401 U.S. at 377 (stating that, "absent a countervailing state interest of

overriding significance," due process requires a meaningful opportunity to be heard). No legitimate state interest has been cited by the City to support the fee, and none is apparent from the record.

### 3. Precedents from Sister Jurisdictions

[¶41] Perhaps most analogous to the instant case is that presented in *Varilek v. City of Houston*, 104 P.3d 849 (Alaska 2004). The relevant facts are as follows. Borough officials issued an NOV to a property owner for violating a land use ordinance regulating trash. *Id.* at 851. The property owner attempted to administratively appeal the NOV, but such appeals required a $200 filing fee. *Id.* Claiming indigence, the property owner sought a fee waiver, but the borough denied his request, later admitting that it had no provision for waiving the fee. *Id.* The property owner sued claiming, inter alia, that the borough's refusal to waive the filing fee violated his right to due process. *Id.*

[¶42] The Alaska Supreme Court agreed that the borough's refusal to offer any alternative to the filing fee for indigent litigants amounted to an unconstitutional denial of due process. *Id.* at 855.

[¶43] In reaching its conclusion, the Alaska court applied its version of the familiar three-part test used in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Varilek*, 104 P.3d at 853-55. Looking at the first factor—the private

interests affected by the governmental action—the Alaska court concluded that, under its precedent, the availability of a fee waiver for indigent parties to comport with due process requirements was not limited to matters involving fundamental rights as defined under federal case law. *Id.* ("An indigent whose business or property interests are threatened by an administrative action originally filed by a government agency need not be litigating a fundamental family matter in order to have a right of access to the courthouse. Since 'prohibitive' filing fees should not be allowed to hamper an indigent litigant's access to the justice system in such situations, it follows that such fees should also not be allowed to hamper his access to an administrative process if such access is a prerequisite to judicial relief." (footnote omitted)).

[¶44] Looking at the second factor—risk of an erroneous deprivation of the private interest through the procedures used—the Alaska court disagreed with the trial court's conclusion that the probable value of additional procedural safeguards was minimal. *Id.* at 855.

[¶45] As to the third factor—the borough's interest in imposing the fee— the Alaska court concluded the fee was neither minimal nor critical to the borough's ability to conduct appeals, noting that the trial court had not, among other things, "weigh[ed] the benefit of such fees against the social costs

inherent in a policy that effectively prohibits indigents from protecting their rights and interests against state actions." *Id.*

[¶46]  Because the trial court had made no findings of fact regarding the property owner's ability to pay the filing fee, the Alaska court remanded for a determination whether the property owner could afford to pay the fee or whether the fee prevented him from pursuing his claim in court. *Id.*

[¶47]  We also use the equivalent of the *Mathews* test in assessing what process is due under our Constitution.  *See Hopkins v. Dep't of Hum. Servs.*, 2002 ME 129, ¶ 18, 802 A.2d 999.  We have not limited the need for fee waivers for indigent parties to family matters.  *See, e.g.*, *Harrington*, 269 A.2d at 315-16; *Bennett*, 90 Me. at 104-05, 37 A. 864.  The risk of an erroneous deprivation—where the only support for the $67,257 judgment is an unadjudicated NOV—is self-evident, and we have noted that preclusion should not apply when the essential elements of adjudication are lacking.  *See Greenlaw*, 602 A.2d at 1160.

### 4.    Size of the Penalty

[¶48]  Finally, the enormity of the fine compared to the minor nature of the offense is not only relevant for due process purposes but also raises excessive fine concerns.

[¶49]   What began as a partially broken front step and trash on Verrinder's lawn has ballooned into a judgment exceeding $67,000.  The trial court called the size of the penalty (when imposing a smaller one than the Court concludes is required) "disproportionate" to the offense, which is the language used in our Constitution to measure excessiveness and is the test under the federal excessive fines provision as well.[17]  *See* Me. Const. art. I, § 9 ("[A]ll penalties and punishments shall be proportioned to the offense . . . ."); *United States v. Bajakajian*, 524 U.S. 321, 335 (1998) ("The text and history of the Excessive Fines Clause demonstrate the centrality of proportionality to the excessiveness inquiry . . . .").

[¶50]  In *State v. Lubee*, 93 Me. 418, 421, 45 A. 520 (1899), we stated, "In determining the question whether the punishment imposed by a statute is proportional to the offense, or whether or not a fine imposed is excessive, regard must be had to the purpose of the enactment, and to the importance and magnitude of the public interest sought by it to be protected."  Certainly,

---

[17] Notably, according to the ordinance, if the trash on Verrinder's lawn had posed "a serious threat to the public health and safety," then the City could have removed the trash and recouped its expenses from Verrinder, which undoubtedly would have cost less than $67,257.  Lewiston, Me., Code of Ordinances § 18-52 (May 1, 2014).  The trash on Verrinder's lawn clearly did not pose any such threat.  The CEO's affidavit, included in support of the City's motion for summary judgment, stated: "Based on my experience working with homeowners, my judgment is that remedying the violations detailed in the Notice should take about three hours, including in [*sic*] the time to purchase a single piece of wood and some nails at a hardware store; would not require any specialized experience; and, the only needed tools are some trash bags and a hammer."

32

enforcement of land use ordinances is important. Verrinder may very well bear responsibility for the cumulative size of the judgment.[18]   Nonetheless, it is indisputable that the result—a $67,257 judgment based on trash in his yard and a partially damaged step—is draconian.

[¶51]  We have concluded that the Legislature has given the courts no room to determine whether a penalty resulting from the imposition of the mandatory minimum fee under the statute is unfair under the specific circumstances of the case. *See Town of Orono v. LaPointe*, 1997 ME 185, ¶¶ 9-12, 698 A.2d 1059.   But regardless of whether that constraint as applied here violates the excessive fines provision in our Constitution, the lack of equity in this result shapes our application of the common law of preclusion.  *See Hossler v. Barry*, 403 A.2d 762, 769 (Me. 1979) ("It may be that in some cases it would be particularly unfair to the defendant if the estoppel were applied.  If that is true, the court need not sanction its use; collateral estoppel is, after all, a flexible doctrine meant to serve the ends of justice not to subvert them."); *Beal v.*

---

[18]  The trial court imposed the minimum penalty of $100 per day.  *See* 30-A M.R.S. § 4452(3)(B). The enormous size of the judgment is due to the long period of time that the violation was alleged to have existed.  On one hand, it seems apparent that Verrinder could have easily stopped the penalties from continuing to run by picking up the trash and fixing the step.  On the other hand, he refrained from complying during a period in which he was contesting that he was in violation at all.  This period was prolonged because of his unsuccessful removal of the action to federal court and his removal of the action from the District Court to the Superior Court.  Hence, at least to some extent, the size of the judgment is due to Verrinder's efforts to exercise his right to be heard on the merits of his defenses before complying with the NOV.

*Allstate Ins.*, 2010 ME 20, ¶ 17, 989 A.2d 733 ("Collateral estoppel applies 'on a case-by-case basis if it serves the interests of justice.'" (quoting *Van Houten v. Harco Constr., Inc.*, 655 A.2d 331, 333 (Me. 1995)); *cf. Hale v. Morgan*, 584 P.2d 512, 518-23 (Cal. 1978) (concluding that a mandatory $100 per day penalty, as applied, violated due process where the total penalty imposed was confiscatory, "wholly disproportionate to any discernible and legitimate legislative goal, and . . . so clearly unfair that it [could not] be sustained"); *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1285 (Pa. 2014) ("In our view, the [mandatory minimum] fine here, when measured against the conduct triggering the punishment, and the lack of discretion afforded the trial court, is constitutionally excessive.").

### III. CONCLUSION

[¶52]  For these reasons, I conclude that our common law of preclusion does not support the application of res judicata to an unappealed NOV in a Rule 80K proceeding when a municipality imposes a substantial fee on an indigent defendant to appeal the NOV.  I would therefore vacate the judgment and remand to the trial court to determine whether the fee imposed a financial hardship on Verrinder.[19]  If the evidence showed that Verrinder was unable to

---

    [19] *See Hardy v. United States*, 375 U.S. 277, 289 n.7 (1964) (Goldberg, J., concurring) ("Indigence must be conceived as a relative concept.  An impoverished accused is not necessarily one totally

pay the fee, then the matter would proceed to a hearing on the merits of the

City's enforcement action, with no preclusive effect given to the NOV.

---

William Verrinder, appellant pro se

Michael E. Carey, Esq., and Peter J. Brann, Esq., Brann & Isaacson, Lewiston, for appellee City of Lewiston

Androscoggin County Superior Court docket number CV-2018-128
FOR CLERK REFERENCE ONLY

---

devoid of means. An accused must be deemed indigent when at any stage of the proceedings his lack of means . . . substantially inhibits or prevents the proper assertion of a particular right or a claim of right. Indigence must be defined with reference to the particular right asserted." (alterations, citations, and quotation marks omitted)); *State v. Byrnes*, 404 A.2d 495, 498 (R.I. 1979) ("Indigency is a relative concept which must be considered and measured in the light of the facts of each case."). Hence, the question that should be resolved in the instant case is whether the cost of appealing to the Board imposed a financial hardship upon Verrinder such that he lacked a fair opportunity to litigate the NOV.